**UNITED STATES of America**
**v.**
**Carmine TRAMUNTI et al.,**
**Defendants.**
**No. 73 Cr. 1099.**

United States District Court,
S. D. New York.

May 2, 1974.

See also D.C., 377 F.Supp. 1.

Paul J. Curran, U.S. Atty., Thomas M. Fortuin, Thomas E. Engel, Asst. U.S. Atty., for U.S.

Herbert S. Siegal, Gilbert Epstein, New York City, for defendant Carmine Tramunti.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Following a nine week jury trial the defendant Carmine Tramunti and fourteen others were convicted of conspiracy to violate the federal narcotics laws. 21 U.S.C. §§ 173, 174, 812, 841(a)(1) & 841(b)(1). Prior to the trial the government had filed and served a notice under 21 U.S.C. § 849 which charged that the defendant Tramunti is a "dangerous special drug offender". A judicial determination that Tramunti is, in fact, a "dangerous special drug offender" would subject him to a possible sentence of twenty-five years under 21 U.S.C. § 849. Had the government not filed the "dangerous special drug offender" notice, the maximum sentence faced by the defendant Tramunti would be fifteen years under 21 U.S.C. § 841.

In a post-trial motion, Tramunti challenged the constitutionality of the statu-

tory provision under which he was alleged to be a "dangerous special drug offender", that is, 21 U.S.C. § 849. Since this section has never been enforced in this district nor, to the best of the government's knowledge, in any federal court, there is a complete absence of judicial precedents, and legislative history thus assumes greater importance.

Section 849 of Title 21 was enacted as part of the comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801–850. There is very little legislative history or scholarly criticism directly pertaining to Section 849 because that section did not receive individual Congressional attention but instead was taken almost verbatim from another bill which was pending at the same time and which had already been subjected to much debate and study. In introducing the amendment which eventually became Section 849, Representative Poff stated: "My amendment is essentially the same as Title X of the Organized Crime Control Act favorably reported by the Committee on the Judiciary on yesterday." 116 Cong.Rec. (pt. 25) 33630 col. 2 (1970). Thus Title X of the Organized Crime Control Act, 18 U.S.C. §§ 3575–3578 and Section 849 of Title 21, U.S.C., are, for the purposes of this constitutional attack, interchangeable, and legislative debates and scholarly criticism which were sparked by Title X provide the most useful source material in studying Section 849.

Prior to the 1970 enactment of Section 849, federal criminal statutes did not authorize greater punishment for the organized crime offender, the habitual offender, or the professional criminal; there was but one maximum and one minimum penalty for each proscribed offense. However, by 1970, respected studies in the area of sentencing had suggested that there should be one maximum sentence applicable to most offenders and a much harsher extended "special" sentence applicable to the organized crime offender, professional offender and habitual offender. "Sentencing Alternatives and Procedures", ABA Project on Minimum Standards for Criminal Justice (App. Draft 1968); President's Commission on Law Enforcement and the Administration of Justice, "The Challenge of Crime in a Free Society", 142, 203 (1968). The two-tiered approach to sentencing recommended by these and other studies had already been incorporated in somewhat varying forms in the Model Penal Code §§ 6.06–6.09; 7.03–7.04 (P.O.D. 1962) and the National Council on Crime and Delinquency's Model Sentencing Act §§ 5–9 (1963). The Minnesota legislature had already enacted a two-tiered sentencing structure, Minn.Stat. Ann. § 609.155 (1964), but New York had studied and rejected a similar bill, Proposed New York Penal Law, Study Bill, Senate Int. 3918, Assembly Int. 5376 pp. 274–77 (1964). Ideally, a two-tiered sentencing structure does not merely provide extended sentences for "special" offenders but it also encourages the legislature to provide lower maximum sentences for the ordinary "normal" offender. The two-tiered approach should present an overall program which aims "to reduce sentencing levels generally and to provide greater flexibility for the courts on the low side of the sentencing spectrum." Association of the Bar of the City of New York, The Proposed Organized Crime Control Act of 1969 (S.30) 44–45 (1970); Remarks of Professor Low of the University of Virginia Law School, in Hearings on S.30 Before a Subcomm. of the Senate Comm. on the Judiciary, 91st Cong.2d Sess. 186 (1970).

With this general background on "special" offender sentencing and its role in the two-tiered sentencing structure which Congress adopted in the Drug Abuse and Prevention Control Act of 1970, I will now turn to the "special" offender statute challenged in this case, section 849 of Title 21, U.S.C. In substance, that section provides that the United States Attorney may file a notice alleging that a defendant charged with a federal narcotics offense is a "special dangerous" offender. After the entry

of a guilty plea or a jury verdict of guilty, the court sitting without a jury holds a hearing to determine the validity of the government's allegations. If the court finds, by a preponderance of the evidence, that the defendant is a "special dangerous" drug offender, the defendant is exposed to a possible term of imprisonment of twenty-five years. Both the government and the defendant are given the right to appeal the sentencing judge's determination.

Even such a cursory summary of Section 849 should expose some of the serious constitutional questions inherent in that section. A closer examination and more serious study of Section 849 does not yield any answers, indeed, it only raises more questions. In his moving papers the defendant Tramunti has argued that Section 849 is violative of the Fifth Amendment requirement of due process and that its imposition would constitute cruel and unusual punishment. Commentators have also focused on the double jeopardy, vagueness, status offense and evidentiary problems that statute presents. See generally McClellan, The Organized Crime Act (S. 30) or Its Critics: Which Threatens Civil Liberties? 46 Notre Dame Law. 146–200 (1970); Note, Constitutional Problems Presented by the Organized Crime Control Act of 1970, 32 Ohio St. L.J. 643–52 (1971); Legislative Notes: Organized Crime Control Act of 1970, 4 U. of Mich. J. of L.Ref. 623–50 (1971).

Many of the constitutional questions raised by Section 849 are complex and the resolution of them must rest on the primary determination of whether Section 849 is merely a sentencing provision (Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1760 (1949)) or whether the statute goes beyond mere sentencing and actually defines a separate and distinct penal offense, thereby extending due process protections to the defendant (Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967)). While I feel very strongly that the substantive constitutional questions raised by Section 849 must be ex-peditiously resolved, I regret that there are two procedural problems in this case, the determination of which precludes my reaching the more substantive constitutional challenges.

While neither the defendant nor the government has raised either of the procedural problems on which I feel that I must decide this motion, both problems are so apparent on a reading of the statute that I feel that I am bound to raise them: first, the method of filing the notice in this case contravened the specific statutory prohibition against the filing of that notice with the presiding judge; and second, the notice lacks the "particularity" which the statute mandates.

As to the first procedural problem, the section states clearly: "In no case shall the fact that the defendant is alleged to be a dangerous special drug offender . . . be disclosed before any plea of guilty or nolo contendere or verdict or finding of guilty to the presiding judge without the consent of the parties." 21 U.S.C. § 849(a). Despite the specific exhortation of Section 849, the government in this case filed the notice with me, the presiding judge, in open court on January 21, 1974.

Furthermore, the legislative history makes it clear that in drafting the language which forbids the filing of the "special dangerous" notice with the judge presiding at the trial, Congress specifically considered the problem of filing the notice with the presiding judge and ultimately decided that it should not be so filed. The original Senate Bill (S.30) did not prohibit the filing of "special dangerous" notices with the presiding judge. In its original Report on S.30, the Committee on the Judiciary of the United States Senate stated: "There is . . . no objection to the judge in a jury or non-jury case reading the allegation, since it is not among the sources of information upon which any judgment may be reached." S.Rep.No.91–617, 91st Cong., 1st Sess. 162–63 (1969). However, both the Bar Association and the Civil Liberties Union immediately voiced strenuous objec-

tion to permitting the trial judge to see the notice prior to a guilty plea or verdict. The Committee on Federal Legislation of the Association of the Bar of the City of New York stated its position:

"The Committee strongly disagrees with the Senate Report's conclusion that 'there is . . . no objection to the judge in a jury or non-jury case reading the allegation . . .' Senate Report 162–63.

"The prosecutor's allegations in a dangerous special offender notice would be little different from the kinds of statements made in a presentence report and, as in the case of a presentence report, disclosure of such allegations, prior to a verdict or guilty plea would inhibit the trial judge in the proper exercise of his functions and be highly prejudicial. Gregg v. United States, 394 U.S. 489, 492 [, 89 S.Ct. 1134, 22 L.Ed.2d 442] (1969) (dictum); cf. Fed.R.Crim.P. 32(c). The Senate Report attempts to distinguish Rule 32(c) on the ground that the allegations contained in a dangerous special offender notice would not be 'among the sources of information upon which any judgment may be reached' but would be 'the equivalent of an indictment, not evidence.' Senate Report 163. However, the basis for Rule 32(c) is not the evidentiary nature of the matter in the presentence report (which is, after all, hearsay) but the recognition that the court is human and that its rulings could be subconsciously influenced by such matters as are found in a presentence report. The only practical choice for a defendant faced with this kind of notice, would be to refuse to waive a trial by jury."

Association of the Bar of the City of New York, The Proposed Organized Crime Control Act of 1969 (S. 30) 50 1970.

The Civil Liberties Union was in virtual agreement with the Bar Association position. In a statement on S. 30 the Civil Liberties Union addressed itself to this specific question and, for the same reasons cited by the Bar Association, concluded that "[t]he government, by giving such adverse information to the judge, will in effect be forcing a defendant to choose a jury trial where he might not otherwise do so." Statement of Lawrence Speiser, Director, Washington Office, American Civil Liberties Union, on S. 30 before the Subcomm.No. 5, Comm. on the Judiciary, U.S. House of Representatives, p. 16.

Senator McClellan attempted to refute the contention that the filing of the "special dangerous" notice with the trial judge would result in prejudice to the defendant. Rather than viewing the notice as a type of presentence report, Senator McClellan instead analogized the filing of the notice to a judge examining an indictment before trial or presiding at a pretrial suppression motion or presiding at the retrial of a case where a guilty verdict had been overturned on appeal. McClellan, "The Organized Crime Act (S. 30) or its Critics: Which Threatens Civil Liberties?", 46 Notre Dame Law. 163–64 (1970).

The Justice Department supported Senator McClellan's views and saw "no reason to believe that the court will be prejudiced by such notification so as to jeopardize the defendant's opportunity for a fair trial." Letter from Will Wilson, Ass't Att'y Gen. (Crim.Div.) to Hon. Emanuel Celler, Chairman, Comm. on the Judiciary, Sept. 9, 1970, in 2 U.S. Code Cong. & Admin.News, 91st Cong., 2d Sess. 4067 (1970).

█ Having considered the conflicting positions of the Bar Association and the Civil Liberties Union on the one side and Senator McClellan and the Justice Department on the other side, the Congress decided that the filing of a notice with the presiding judge may prejudice the defendant and amended the bill to reflect this concern. The resulting statutory language now codified in 21 U.S. C. § 849(a) expresses a studied choice by the Congress that I should not have seen the "special dangerous" notice prior to the jury verdict. Whether or not I

agree that Congress made the correct choice or whether or not I believe that I was at all consciously or subconsciously influenced by having seen the notice before the verdict, I do not feel free to ignore the clear provisions of Section 849. The potential penalties to which Section 849 subjects a defendant are very grave indeed, and in seeking to have them imposed the government must precisely follow all of the procedural safeguards which the section requires.

 Therefore, since the government violated the filing provision of Section 849(a) I feel that the "special dangerous" notice must be dismissed as to the defendant Tramunti. In noting that the government filed the notice in contravention of the statutory language, I feel I must also point out that while the wording of the statute is clear that the notice is *not* to be filed with the presiding judge, the statute is regrettably unclear as to where, in fact, such notice is to be filed. It is possible that the notice could be filed with the Chief Judge of the District Court and released to the presiding judge only after the jury verdict. However, while such an approach may be viable in this district, it does not solve the problem in those districts where there is only one federal district judge appointed.

I therefore urge either the Appellate Court or the Congress to fill this apparent procedural gap by formulating a plan under which "special dangerous" notices could be filed. Such a plan should also clarify the question as to what judge should order the notice sealed, if sealing is deemed necessary under 21 U.S.C. § 849.

 The second procedural defect I find in the notice filed by the government is that it fails to allege "with particularity the reasons why [the United States] attorney believes the defendant to be a dangerous special drug offender." 21 U.S.C. § 849(a). The notice filed in this case is merely a recital of the language of Section 849 preceded by a short paragraph stating that the section is applicable to Carmine Tramunti. There is no "particularity" at all and, as a result, the defendant was not apprised of the basis for the government's allegations. At the post-trial hearing held on this matter, the government introduced no evidence but rested on the trial record. *It is not clear whether a statement in the "special dangerous" notice to the effect that the government intended to rely on the trial record would have satisfied the "particularity" requirement of Section 849(a), and since the notice in this case contained no such statement, I do not reach that question.* However, as I have previously suggested that either the Appellate Court or the Congress formulate a plan for the filing of "special dangerous" notices, I would now urge that in the formulation of such a plan some consideration be given to the type or form of notice the defendant is entitled to receive. Some guidelines should be set forth to elucidate this "particularity" requirement which Congress has written into the statute.

Having thus decided that the Section 849 notice must be dismissed as to the *defendant Tramunti, I further find that* the Section 849 notices filed against the defendants Joseph DiNapoli and Frank Pugliese must also be dismissed, since they suffer from the same procedural defects. Finally, I urge that the government avail itself of the provisions of Section 849(h) and immediately appeal this decision so that the Second Circuit is afforded the opportunity to provide the much needed judicial clarification of the controversial statutory plan embodied in Section 849.

So ordered.