STATE of North Dakota, Plaintiff
and Appellee,

v.

Mark Alan WELLS, Defendant
and Appellant.

Cr. No. 621.

Supreme Court of North Dakota.

March 30, 1978.

As Amended April 4, 1978.

John M. Olson, State's Atty., Bismarck, for plaintiff and appellee, State of North Dakota.

Benjamin C. Pulkrabek, Mandan, for defendant and appellant.

VOGEL, Justice.

This is an appeal from a judgment and sentence of life imprisonment after a plea of guilty to the crime of murder. The errors alleged, and an attack on constitutionality, relate entirely to the dangerous special offender statute, Section 12.1–32–09, N.D.C.C. If the dangerous special offender statute had not been applied, the maximum sentence of confinement would have been 20 years, as specified in Section 12.1–32–01, subsection 1, N.D.C.C. We uphold the constitutionality of the statute, but remand for resentencing because of lack of compliance with the notice provision of the dangerous special offender statute.

The contentions of the appellant may be summarized as follows:

## I

The defendant asserts that the hearing held to determine whether he was a dangerous special offender constituted a trial, or part of a trial, and therefore he was entitled to, but did not receive, constitutional rights including: (1) the right to a jury trial, (2) the right to confront the "witnesses" against him (presumably the persons whose reports were considered by the judge in the sentencing proceedings and persons referred to in the probation officer's report), and (3) the right to have only admissible evidence received in connection with the sentencing.

## II

That the statute is unconstitutionally vague for failure to define "mentally abnormal" and "persistent aggressive behavior."

## III

That the statute provides no ascertainable standard of guilt and is therefore unconstitutional.

## IV

That the statute itself was violated because the State's Attorney's notice to the defendant specifying that the State would invoke the dangerous special offender statute did not comply with the requirement of "setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender."

We uphold the constitutionality of the statute [Questions I, II, and III], but remand for resentencing because of the State's failure to comply with the statute [Question IV].

Pertinent parts of the statute are set forth in the footnote.[1]

---

1. "12.1–32–09. Dangerous special offenders, extended sentences—Procedure.—1. A court may sentence a convicted offender to an extended sentence as a dangerous special offender in accordance with the provisions of this section upon a finding of any one or more of the following:

"a. The convicted offender is a dangerous, mentally abnormal person. The court shall not make such a finding unless the presentence report, including a psychiatric examination, concludes that the offender's conduct has been characterized by persistent aggressive behavior, and that such behavior makes him a serious danger to other persons.

. . . . .

"e. The offender is especially dangerous because he used a firearm, dangerous weapon, or destructive device in the commission of the offense or during the flight therefrom.

. . . . .

"2. The extended sentence may be imposed in the following manner:

"a. If the offense for which the offender is convicted is a class A felony, the court may impose a sentence up to a maximum of life imprisonment.

. . . . .

"3. Whenever an attorney charged with the prosecution of a defendant in a court of this state for an alleged felony committed when the defendant was over the age of eighteen years has reason to believe that the defendant is a dangerous special offender, such attorney, at a reasonable time before trial or acceptance by the court of a plea of guilty, may sign and file with the court, and may amend, a notice specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection 2, and setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. In no case shall the fact that the prosecuting attorney is seeking sentencing of the defendant as a dangerous special offender be disclosed to the jury. If the court finds that the filing of the notice as a public record may prejudice fair consideration of a pending criminal matter, it may order the notice sealed and the notice shall not be subject to subpoena or public inspection during the pendency of such criminal matter, except on order of the court, but shall be subject to inspection by the defendant alleged to be a dangerous special offender and his counsel.

"4. Upon any plea of guilty, or verdict or finding of guilt of the defendant of such felony, a hearing shall be held, before sentence is imposed, by the court sitting without a jury. Except in the most extraordinary cases, the court shall obtain a presentence report and may receive a diagnostic testing report under subsection 4 of section 12.1–32–02 before holding a hearing under this subsection. The court shall fix a time for the hearing, and notice thereof shall be given to the defendant and the prosecution at least five days prior thereto. The court shall permit the prosecution and counsel for the defendant, or the defendant if he is not represented by counsel, to inspect the presentence report sufficiently prior to the hearing as

**I**

■ We could, and we should, refuse to consider the arguments under this heading because none of them, except possibly the one relating to hearsay, was raised in the trial court. It is fundamental that a trial court must be given an opportunity to rule on issues, except jurisdictional issues, before they can be made issues on appeal. *State v. Haakenson*, 213 N.W.2d 394 (N.D. 1973).

■ However, since this is a case involving a life sentence, and because we presume that the same issues would be raised in a post-conviction proceeding if not disposed of on the appeal, we will dispose of them now. See *State v. Olmstead* (3d appeal), 261 N.W.2d 880 (N.D.1978); *State v. Metzner*, 244 N.W.2d 215 (N.D.1976).

*As to sentencing generally (without reference to dangerous special offender statute)*

The answers to the procedural questions can readily be found in *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), or in other cases cited in a Note, "The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals," 89 Harv.L.Rev. 356 (Dec.1975). For a recent decision, indicating that some due-process considerations apply in sentencing, see *United States v. Fatico*, 441 F.Supp. 1285 (E.D.N.Y.1977).

■ 1. There is no right to a jury trial on sentencing. *Williams v. New York, supra; United States v. Glick*, 463 F.2d 491,

494 (2d Cir. 1972); *United States v. Interstate Engineering Corporation*, 288 F.Supp. 402, 411 (D.N.H.1967), *affirmed sub nom. New England Enterprises, Inc. v. United States*, 400 F.2d 58 (1st Cir. 1968), *cert. denied*, 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969). A jury trial on a sentence has never been a part of the judicial system of this State.

■ 2. The right of confrontation of witnesses does not apply to sentencing proceedings. *Williams v. New York, supra; Williams v. Oklahoma*, 358 U.S. 576, 584, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959), but see *United States v. Fatico, supra*, holding that denial of access to an informant whose declarations are offered as evidence at a critical stage of the proceeding, as to crucial information that directly affects a substantial liberty interest of a defendant, offends the right of confrontation. 441 F.Supp. 1285 at 1297.

■ We note, in passing, that the defendant examined both the psychiatrist and the probation officer who prepared the presentence report. The former was called as a court witness, after both prosecution and defense failed to call him, and the latter was called by the defendant and was examined by the defense. No request was made to call any other witness. No obstacle was placed in the way of the defense as to calling any witness it chose. We find no error in this procedure. *United States v. Fatico, supra.*

■ 3. Inadmissible evidence may be considered in sentencing. *Williams v. New*

---

to afford a reasonable opportunity for verification. In extraordinary cases, the court may withhold material not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, any source of information obtained on a promise of confidentiality, and material previously disclosed in open court. A court withholding all or part of a presentence report shall inform the parties of its action and place in the record the reasons therefor. The court may require parties inspecting all or part of a presentence report to give notice of any part thereof intended to be controverted. In connection with the hearing, the defendant shall be entitled to compulsory process, and cross-examination of such wit-

nesses as appear at the hearing. A duly authenticated copy of a former judgment or commitment shall be prima facie evidence of such former judgment or commitment. If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term within the limits specified in subsection 2. The court shall place in the record its findings including an identification of the information relied upon in making such findings, and its reasons for the sentence imposed."

*York, supra; Williams v. Oklahoma, supra.* The court may even consider evidence as to crimes of which the defendant was acquitted [*United States v. Sweig*, 454 F.2d 181, 184 (2d Cir. 1972)], arrests which did not result in convictions [*City of Dickinson v. Mueller*, 261 N.W.2d 787 (N.D.1977); *Houle v. United States*, 493 F.2d 915 (5th Cir. 1974)], and criminal conduct as to which no charge has been made [*United States v. Johnson*, 507 F.2d 826 (7th Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975).

■ The basis for the lessened procedural rigor of sentencing as compared to trial is stated in *Williams v. New York, supra.* In brief, the judge should be allowed the widest possible range of information to assist him in the exercise of his discretion in fixing sentences within statutory and constitutional limitations. If information available to a sentencing judge were limited to evidence adduced in open court, after a conviction, it is probable that the defendant would more often be harmed than helped.

■ The rules of evidence, except those relating to privileges, do not apply to sentencing procedures. Rule 1101(d)(3), N.D. R.Ev.

■ The foregoing statements apply generally to all sentencing procedures. When the dangerous special offender statute is invoked, additional procedural requirements must be met. These include notice in advance to the defendant that the statute will be invoked, the requirement of setting out with particularity the reasons why the prosecuting attorney believes the defendant to be a dangerous special offender (discussed below), the requirement of a sentencing hearing, the requirement of a presentence report except in extraordinary cases, five days' advance notice of the hearing date, the right to inspect the presentence report and an opportunity to verify statements made in it except in extraordinary cases, and the right to compulsory process and cross-examination of witnesses produced by the prosecution. These rights are in addition to the rights of all persons being sentenced. All of these rights were allowed the defendant in the present case, except as will be mentioned below in connection with the notice.

■ Much of the attack of the appellant on the sentence imposed appears to be based upon a misapprehension of the provisions of the criminal code as to dangerous special offenders. The appellant seems to assume that he cannot be considered as a dangerous special offender unless he is charged with the crime of being such an offender, and is tried on that charge with the aid of counsel and found guilty of that charge. Actually, the whole process of being found to be, and sentenced as, a dangerous special offender is a discretionary part of the procedure of sentencing a defendant upon conviction of a substantive charge, which in this case was that of murder. We have never held, and do not hold now, that the defendant is entitled to a jury trial as to the extent of the sentence imposed upon him. On the contrary, sentencing is a function of the judge.

The North Dakota Criminal Code, adopted in 1973 and effective July 1, 1975, including the dangerous special offender statute, was adapted in large part from a proposed Federal criminal code, but it was also drafted to comply to a great extent with the recommendations of the American Bar Association Project on Standards for Criminal Justice, particularly the Standards relating to Courts, Corrections, Sentencing Alternatives and Procedures, and Probation, and it is consistent with the Standards and Goals of the National Advisory Commission on Criminal Justice Standards and Goals.

One of the underlying concepts of the Standards and of the Standards and Goals is that maximum sentences should normally be fixed so as to apply to the ordinary offender, rather than the extraordinary, or worst possible, offender. It has been customary in this country for statutes on sentencing to specify maximum sentences sufficient to punish the worst possible offender. The sometimes-unfortunate result is that less reprehensible acts are punished by maximum sentences which are excessive.

The concept of the new criminal code is that sentences longer than ordinary maxima should be allowed in cases involving the worst possible offender, upon compliance with certain procedures and satisfying specified criteria. Thus the North Dakota Criminal Code provides for a maximum sentence for Class A felonies, including homicide, of 20 years' imprisonment, or a fine of $10,000, or both [Section 12.1–32–01, N.D. C.C., subsection 1], but also provides that an extended sentence up to life imprisonment may be imposed if the offender is either a dangerous, mentally abnormal offender, a professional criminal, a persistent offender, has twice been convicted of an offense which seriously endangered the life of another person, or is especially dangerous because he used a firearm, dangerous weapon, or destructive device [Sec. 12.1–32–09, N.D. C.C.]. See Standards Relating to Sentencing Alternatives and Procedures, Standards 2.1, 2.5(d), and 3.1(c), and Standards Relating to Corrections, Standard 5.3, of the National Advisory Commission.

■ The dangerous special offender statute does not create a new crime. It only provides for an increase in the penalty for the offense of which the defendant was convicted. *United States v. Stewart*, 531 F.2d 326 (6th Cir. 1976), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976).

## II

A serious question is raised as to the definitions of "mentally abnormal" and "persistent aggressive behavior."

While the term "mentally abnormal" is not defined in the statute, subdivision 1–a of Section 12.1–32–09 provides that a court shall not make a finding that a person is a dangerous, mentally abnormal person "unless the presentence report, including a psychiatric examination, concludes that the offender's conduct has been characterized by persistent aggressive behavior, and that such behavior makes him a serious danger to other persons."

■ While the statute does not define the term "persistent aggressive behavior," it will be noted that it is not the jury, if there is one, which decides whether there is "persistent aggressive behavior," but that the presentence report and psychiatric examination must so indicate. Incidentally, the literal language of the section would indicate that the presentence report, which is prepared by a parole officer, must "conclude" that the offender's conduct has been characterized by persistent aggressive behavior. If read literally, this would put a part of the sentencing process into the hands of a probation officer, which would subject the statute to serious constitutional challenge as an invasion of the judicial function. We interpret this language to mean that the court may not make a finding that the defendant is a dangerous, mentally abnormal person unless *the court* concludes, from the presentence report, including a psychiatric examination, that the offender's conduct may be so characterized.

■ As so interpreted, we find no constitutional bar to the application of the statute. Certainly in this case a probation officer, the psychiatrist, and the court evinced a full understanding of the meanings of the terms "persistent aggressive behavior" and "mentally abnormal." We believe these are terms which are readily comprehensible to courts, probation officers, and psychiatrists, and that attempts to further refine the definitions would be counterproductive. See *State v. Motsko*, 261 N.W.2d 860 (N.D.1977).

## III

■ We hold that the statute, read as a whole, is sufficiently specific to apprise a defendant of factors which may be considered in order to determine whether he is or is not a dangerous special offender, and to permit him to prepare for and participate in the sentencing procedure intelligently. This is all that is required. *State v. Motsko, supra.*

A Federal statute [18 U.S.C. § 3575] generally similar to our dangerous special offender statute has been held constitutional

when attacked on due-process grounds. *United States v. Stewart, supra.*

## IV

We turn now to the contention that the statute relating to dangerous special offenders was not complied with in the present case, in that the notification filed pursuant to the statute did not meet the statutory requirement of "setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender."

A similar contention was before this court in *State v. Ternes,* 259 N.W.2d 296 (N.D.1977). In that case the notice filed by the State's Attorney gave as a reason for invoking the statute "that Philip J. Ternes used a firearm in the commission of the offense of murder as charged in the information in the above-captioned action." The majority opinion held that this complied with subdivision 1–e of Section 12.1–32–09, quoted above. The dissent disagreed. However, the majority opinion went on to say:

> "We interpret the words of the statute as establishing four categories of special offenders who may be shown to be dangerous, and one category of special offenders who are, per se, dangerous." 259 N.W.2d 296 at 299.

The one category of offenders deemed, per se, dangerous was, of course, the category of offenders who used firearms, dangerous weapons, or destructive devices in the commission of the offense. The minority opinion would have held that the notice in *Ternes* was insufficient. Thus the majority and minority opinions agree in requiring that the State's Attorney who attempts to invoke the dangerous special offender statute as one of the first four categories must comply with the provision requiring "setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender."

When we examine the amended notice filed by the State's Attorney in the present case, we find the following language:

> "The undersigned, . . . believes that the defendant is a dangerous special offender who upon conviction for the charge of murder is subject to the imposition of a sentence under subsection 2 of the aforementioned statute. The reason for said notice being given is that the defendant was over the age of eighteen years at that time the offense of murder was committed; that the defendant is a dangerous, mentally abnormal person as defined by the provisions of subsection (1 a) of the aforementioned statute; that the defendant committed the crime of murder by using a dangerous weapon as defined by the provisions of subsection (1 e) of the aforementioned statute; that the defendant committed the offense in a manner indicating his lack of regard for the value of human life."

The majority opinion in *State v. Ternes* would perhaps permit a finding that the defendant was a dangerous special offender under subdivision 1–e, if he had used a dangerous weapon, but the evidence before the district judge showed that the so-called "dangerous weapon" was either a brassiere or other ligature used for strangulation, and the district judge found that the ligature was not a dangerous weapon and declined to find the defendant to be a dangerous special offender on that account.

The district judge then proceeded to consider whether the defendant was a "dangerous, mentally abnormal person" under the provisions of subsection 1–a of the statute, and found that he was. It will be seen from the language of the notice quoted above that the only notice given to the defendant by the language of the amended notice as to the reasons for invoking the statute are (1) that he was over the age of 18 years when he committed the offense of murder; (2) that he is a "dangerous, mentally abnormal person," as defined by the provisions of subsection 1–a; and (3) that he committed the offense in a manner indicating his lack of regard for the value of human life.

These statements fall far short of "setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender."

The difference between the notice given and the notice that could have been given is illustrated by the evidence presented by the prosecution at the hearing to determine whether the defendant was or was not a dangerous special offender. At that hearing the State gave evidence of a psychiatric examination and the report of the probation officer containing considerable detail as to the prior criminal and other activities of the defendant. This material disclosed an arrest for rape in South Dakota, resulting in a plea of guilty to a reduced charge of fourth-degree burglary. There was evidence of several episodes of breaking into young women's living quarters and stealing undergarments. There was evidence of a prior attempted rape, not consummated. The record discloses no reason why details of such evidence could not have been included in an amended notice, thereby giving the defendant an opportunity to prepare for, and if possible controvert, the evidence offered by the State.

We do not hold that the defendant is entitled to a particularized notice of evidence to be offered by the State at the time of sentencing in the usual case. What we do hold is that a statute containing specific requirements that a notice setting out "with particularity the reasons why" an extended sentence should be imposed is not complied with by generalities and language copied from the statute itself, or merely paraphrasing the statute. *State v. Ternes, supra; United States v. Sutton*, 415 F.Supp. 1323 (D.D.C.1976); *United States v. Tramunti*, 377 F.Supp. 6 (S.D.N.Y.1974); *United States v. Kelly*, 384 F.Supp. 1394 (W.D. Mo.1974), *affirmed*, 519 F.2d 251 (8th Cir. 1975).

In fairness to the prosecution, we add that the hearing in this case on the question of whether Wells was a dangerous special offender was held prior to the release of our opinion in *State v. Ternes, supra.*

A majority of the court holds that the error is an error in sentencing, which can be corrected upon a remand to the district court. It therefore is ordered that the case is remanded for further sentencing proceedings, and that the State may amend its notice prior to the hearing so as to comply with the requirements of the statute.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

## ADDENDUM

VOGEL, Justice.

The following remarks are not part of the majority opinion of the court, but are comments of the author of the opinion.

I would hold that the notice cannot be amended after a plea or verdict of guilty. In my view, the defendant is entitled to notice in advance of the charge against him and of the maximum penalty which can be imposed. See dissent in *State v. Ternes, supra.* Particularly is this true in cases where he pleads guilty. Such a plea must be assumed to be based on the charge against him, including the notice of intention to invoke the dangerous special offender statute. The statute itself requires that the notice be filed "a reasonable time before trial or acceptance by the court of a plea of guilty, . . . " Cases holding that the notice cannot be amended after verdict or acceptance of plea of guilty include *United States v. Sutton, supra; United States v. Kelly, supra;* and *United States v. Edwards, supra.* I therefore would hold that upon remand the district court should be directed to enter a sentence of not more than 20 years' imprisonment, the maximum sentence when the dangerous special offender statute is not invoked.

SAND, Justice (specially concurring with the basic opinion by Justice VOGEL).

Generally, where the Legislature adopted a federal statute there is a presumption the Legislature intended to accomplish purposes and objectives similar to those of the Congress which enacted the law. Also, where the statute has been construed by the feder-

al courts before the Legislature adopted the statute it is presumed that the Legislature adopted the statute with the construction placed upon it by the federal courts. However, where the statute adopted has not been interpreted and construed by the federal courts at the time of the enactment by the Legislature, subsequent interpretation or construction by the federal court will not be controlling but may be persuasive.

In those instances, where material and substantive changes are made by the Legislature in adopting a federal statute the presumption that the Legislature intended to accomplish the same purposes and objectives as the Congress is no longer valid. Substantive changes can easily, and probably do, indicate different purposes and objectives than those intended by the Congress when it initially enacted the law.

In this respect, § 12.1–32–09, subsections (1) and (2), North Dakota Century Code, are substantially different from 18 U.S.C.A. § 3575 [1](c), (d), (e), (f), and (g).

The North Dakota Act, in part, provides as follows:

"1. A court may sentence a convicted offender to an extended sentence as à dangerous special offender in accordance with the provisions of this section upon a finding of any one or more of the following:

a. The convicted offender is a dangerous, mentally abnormal person. *The court shall not make such a finding unless a presentence report, including a psychiatric examination,* concludes that the offender's conduct has been characterized by persistent aggressive behavior, and that such behavior makes him a serious danger to other persons.

b. The convicted offender is a professional criminal. The court shall not make such a finding unless the offender is an adult *and the presentence report shows* that the offender has substantial income or resources derived from criminal activity." Section 12.1–32–09(1)(a) and (b), NDCC. [Emphasis added.]

Initially, it is noted that the Federal Act defines and treats a "special offender" separately from a "dangerous offender," whereas the North Dakota Act defines both a "special offender" and a "dangerous offender" as one, namely a "dangerous special offender." In addition, the North Dakota Act does not contain provisions similar to subsections (f) and (g), 18 U.S.C.A. § 3575, of the Federal Act.

But more importantly, § 12.1–32–09(1)(a) provides that

"The court shall not make such a finding unless a presentence report, including a psychiatric examination, concludes that the offender's conduct has been characterized by persistent aggressive behavior, and that such behavior makes him a serious danger to other persons."

The significant point is that the court may not make such a finding unless the presentence report, and the psychiatric examination, concludes that the person is a dangerous offender. No reference is made to the notice filed under subsection (3) of § 12.1–32–09, NDCC, or the information submitted by the prosecution on the hearing pursuant to the notice.

Similarly, subdivision (1)(b) relies almost exclusively upon the presentence report to show that the convicted offender is a professional criminal. Again, no reference is made to the notice filed by the prosecutor or the information developed at the hearing.

The reference to the presentence report without making reference to or incorporating the notice filed by the prosecutor and the subsequent hearing suggests that the court, independent of any notice filed by the prosecutor, may make a finding that the defendant is a dangerous special offender if the court can so find from the presentence report and a psychiatric examination independent of the notice that may have been filed by the prosecutor and the evidentiary hearing held pursuant to such notice.

---

1. 18 U.S.C.A. § 3575 was enacted in 1970 as a part of the Organized Crime Control Act (Public Law 91–452, Title X, § 1001(a), Oct. 15, 1970, 84 Stat. 948).

Because these or similar provisions are not found in the Federal Act, it is doubtful that the following statement in *United States v. Edwards*, 379 F.Supp. 617 (Fla. 1974), applies to the North Dakota Act.

"But the statute prohibits an enhanced sentence unless the government seeks it and requires that to obtain enhancement the Government must file an information prior to trial." [2]

In this connection, we should note that the Fourth Circuit Court of Appeals, in *United States v. Williamson*, 567 F.2d 610 (1977), referred to *United States v. Stewart*, 531 F.2d 326, 332 (6th Cir. 1976), and *United States v. Bowdach*, 561 F.2d 1160 (5th Cir. 1977), and concluded that the dangerous special offender statute does not create new and distinct criminal charges, but rather provides for increase in penalty for the offense itself.

We should also note that *United States v. Ilacqua*, 562 F.2d 399 (6th Cir. 1977), held that the government has the right to appeal from the trial court's refusal to entertain the petition that the offender is a dangerous special offender. North Dakota, however, does not have this review provision as is found in 18 U.S.C.A. § 3575.

It cannot be overlooked that in this state sentencing has always been a judicial function and has never been surrendered or delegated to some other legal body or office.

Throughout the provisions of § 12.1–32–09, NDCC, no statement is found which clearly provides that the court may not entertain the question whether or not the offender is a dangerous special offender unless a notice of petition has been filed by the prosecutor as provided for in subsection (3) of § 12.1–32–09, NDCC, and in view of the specific language found in subdivisions (a) and (b) of § 12.1–32–09(1), discussed earlier herein, it is difficult to conclude that the court may not consider whether or not the defendant is a dangerous special offender without first having had a petition or notice filed by the prosecutor as provided for in subsection (3). Such a construction would place the court at the whim of the prosecutor who already has made the deliberate decision whether or not to prosecute and under what specific charge.

The position of the various provisions of the Act may be of some significance. The Federal Act states, or leads off, with the provisions found in subsections (3) and (4) of § 12.1–32–09, NDCC, whereas the North Dakota provision leads off with subsection (1), which provides that the court may sen-

---

**2.** The conclusion in the *Edwards* case may have been the result of the Court relying too heavily upon the case of *United States v. Noland*, 495 F.2d 529 (5th Cir. 1974), which held that the trial court's authority to impose enhanced sentences on drug offenders by reason of prior drug felony convictions was restricted to cases where the information relied upon was filed with the court and served upon the defendant before trial.

However, a careful comparison of 21 U.S. C.A. § 851, which was enacted as part of the Comprehensive Drug Abuse and Control Act of 1970 (Public Law 91–513, Title II, § 411, Oct. 27, 1970, 84 Stat. 1269) with 18 U.S.C.A. § 3575 shows that there is a substantial difference.

The pertinent language in 21 U.S.C.A. § 851 is:

"No person . . . shall be sentenced to increased punishment by reason of . . . prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . . "

The pertinent provisions of 18 U.S.C.A. § 3575 are:

"Whenever an attorney charged with the prosecution of a defendant . . . has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender . . . and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. . . . "

It should be noted that 18 U.S.C.A. § 3575 does not contain the "unless" provision found in 21 U.S.C.A. § 851 which compelled the court in *Noland* to conclude that unless the notice and information was filed before trial the court did not have the authority to impose an enhanced sentence.

I consider this a substantial difference.

tence a convicted offender to an extended sentence as a dangerous special offender in accordance with the provisions of this section upon a finding of any one of the conditions set out later in subsection (1).

The position of these various provisions could well be a clue as to what the North Dakota Legislature intended. Specifically, whether or not the notice referred to in subsection (3) filed by the prosecution is essential or necessary before the court may entertain the question whether or not the defendant is a dangerous special offender is uncertain. The position of the various provisions in the North Dakota Act seems to indicate that the court may consider a defendant a dangerous special offender without a notice filed by the prosecutor.

But, be that as it may, under the due process concept, notice would have to be given to the defendant to permit him to refute any statements found in the presentence report and psychiatric examination upon which the court may rely. No independent notice from the notice filed by the State's Attorney was given by the court. However, no provision is made for the court to give a notice.

A further anomaly arises from the use of the term "court" or "the court" as used throughout the provisions of subsection (3) prior to the 1977 amendment, which was enacted without an emergency clause. (This case was tried prior to 1 July 1977.)

The term "court," in this state, generally refers to the judge. However, the following sentence creates a question as to what is actually meant by the term "court."

"In no case shall the fact that the prosecuting attorney is seeking sentencing of the defendant as a dangerous special offender be disclosed to the jury, or be disclosed, before any plea of guilty or verdict or finding of guilt, to the *presiding judge* without the consent of the par-

ties." § 12.1–32–09(3), NDCC. [Emphasis added.]

Here the specific term "presiding judge" is used, as distinguished from "the court." The subsection continues:

"*If the court finds* that the filing of the notice as a public record may prejudice fair consideration of a pending criminal matter, it may order the notice sealed and the notice shall not be subject to subpoena or public inspection during the pendency of such criminal matter, except on order of the court, but shall be subject to inspection by the defendant alleged to be a dangerous special offender and his counsel." [Emphasis added.]

This raises the question: How can the court find that the filing of notice may prejudice fair consideration of the pending criminal matter if the term "court" does not refer to a judge? Conceivably, the term "the court" may refer to a judge other than the presiding judge, but in North Dakota this could create a considerable problem because generally the presiding judge [3] is the court, unless it were concluded that a judge would periodically go from county to county to determine whether or not a notice that the defendant is a dangerous special offender has been filed with the court. As stated earlier, in North Dakota the term "court" refers to the judge and would include the presiding judge. Which raises the question: How else, then, can the court determine whether or not a notice will prejudice the fair consideration of the criminal matter unless the judge looks at the notice and makes the determination? In addition, if the judge is to look at the notice to make the determination, how then can it be kept from the judge who will also be the presiding judge at the trial? [4]

Individually as members of the court, or collectively, we must always be concerned with due process. The procedures provided

---

**3.** The term "presiding judge" is used in a different meaning than the term is used in our administrative order designating the presiding judge in each judicial district. As used above, the term "presiding judge" would be comparable to "trial judge."

**4.** Fortunately for North Dakota, the language "or be declared, before any plea of guilty or verdict of guilty to the presiding judge without consent of the parties" has been amended out by Ch. 128, § 1, 1977 S.L.

for in subsections (3) and (4) of § 12.1–32–09, NDCC, were presumably designed to provide and assure due process, but that does not mean that due process may not be provided for by other statutory procedure.

However, the provisions of subsections (1) and (2) seem to suggest that other procedures are to be employed for several reasons. As has been mentioned earlier, no reference is made in subdivision (1) to the notice previously mentioned in subsection (3). In addition, subsections (1) and (2) refer to the presentence report and psychiatric examination which normally will not be available to the prosecuting attorney until after the trial. This is significant because of the requirement of the notice of "setting out with particularity" why the prosecuting attorney believes the defendant to be dangerous. Assume the information contained in the presentence report and psychiatric examination are not contained in the statement with the notice. Does this mean that the notice is invalid? I would think not, but a strict interpretation of the statute would produce such a result.

The principal objective of any proceedings of the kind under consideration is to give adequate notice to the defendant so that he may have an opportunity to introduce counter-evidence or otherwise refute the claim that he is a dangerous special offender.

It would be helpful to all concerned if the Legislature would clarify and resolve some of these uncertainties and specifically provide under what conditions the court may consider the question whether or not the defendant is a dangerous offender, including the presentence report and psychiatric examination.

As to keeping the motion of the prosecution secret from the judge, the court in *United States v. Holt*, 397 F.Supp. 1397 (D.C.1975), had this to say:

"Did Congress intend, as Defendants maintain, that they, their lawyers and the prosecutor should know something that the judge should be kept ignorant of—that an enhanced sentence would be sought? There is no precedent in this Circuit so holding, and I find that the government's inadvertent failure to keep its special dangerous offender notice a secret from the Court has not prejudiced the Defendants. Thus there is no reason to strike the notice."

*United States v. Sutton*, 415 F.Supp. 1323 (D.C.1976) in its construction of 21 U.S.C.A. § 849, of which subsections (a) and (b) are identical to 18 U.S.C.A. § 3575(a) and (b), does not agree with *Holt, supra*.

*United States v. Kelly*, 519 F.2d 251 (8th Cir. 1975), held that the government [prosecutor] may not proceed on the theory that the defendant is a dangerous special offender without first making the necessary notice. Significantly, it did not specifically say that the trial court could not consider whether or not the defendant was a dangerous special offender without the prosecutor first having filed such notice.

The court held that the notice was inadequate and that the proceedings by the prosecutor were properly dismissed. The specific question whether or not the prosecutor could file an amended notice was not specifically or directly included in the court's disposition of the case.

On amending notice after trial, the *Sutton* court, which relied upon *Kelly*, said that the notice could not be amended after trial. But on further analysis of the *Sutton* case its position is not as strong as it initially appears, particularly in view of its following language:

"Moreover, even if this Court were to allow such an amendment [after trial], it seems clear that the memorandum is just as insufficient on the question of 'dangerousness' as the original notice; no reasons are given as to why the government believed a longer-than-usual sentence necessary 'for the protection of the public from further criminal conduct by the defendant.' 21 U.S.C. § 849(f)." *United States v. Sutton*, 415 F.Supp. 1323, 1327.

The court, in *United States v. Edwards*, 379 F.Supp. 617 (D.C.1974), however, concluded that the notice could not be amended after the defendant was convicted. The

court for its conclusion apparently relied upon the language " 'a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere.' " The court apparently concluded that the language "and may amend a notice" related back to the "reasonable time before trial [etc.]."

It should be noted that the procedure outlined in 18 U.S.C.A. § 3575(a) and (b), as well as the procedure outlined in § 12.1–32–09(3) and (4), NDCC, involved two procedures and are sometimes referred to as a two-tier procedure—first the guilt of the defendant must be determined, then the determination whether defendant is a dangerous special offender is made for imposition of sentence.

I find it somewhat difficult to accept the concept that in sentencing a convicted defendant a stricter procedure is required than is required for the initial question whether or not the defendant is guilty of the crime charged.

There is a significant difference between the proof required in a criminal trial and the proof required in determining whether or not the defendant is a dangerous offender after he has been convicted. At the basic trial the proof must be beyond a reasonable doubt, whereas at the sentencing hearing it is the preponderance of the evidence. Section 12.1–32–09(1), NDCC, provides in part "upon a finding of any one or more of the following:" and subsection (4) in part provides, "If it appears by a preponderance of the information . . . ." As can be readily observed, neither of the two statutory provisions require the finding to be beyond a reasonable doubt. *United States v. Holt*, 397 F.Supp. 1397 (Tex.1975).

In *United States v. Pandilidis*, 524 F.2d 644 (6th Cir. 1975), the court had under consideration whether or not an indictment may be amended by filing a bill of particulars. The court was of the opinion an indictment could only be changed by the grand jury, but nevertheless the court concluded that this constituted only harmless error and stated:

"The rule preventing the amendment of an indictment should be applied in a way that will preserve the rights from invasion; where these rights are not threatened, rules governing indictments should not be applied in such a way as to defeat justice fairly administered."

Generally, objections which could have been obviated by a bill of particulars cannot be raised in the appellate court unless a motion or request for such a bill was made in the lower court. 24 C.J.S. *Criminal Law* § 1678(2), p. 1187; *State v. Lavin*, 204 N.W.2d 844 (Iowa 1973); *United States v. Barbato*, 471 F.2d 918 (1st Cir. 1973); *United States v. Rodriguez*, 465 F.2d 5 (2d Cir. 1973).

The foregoing applies to indictments or information where the defendant claims after trial that the indictment or information did not adequately inform him of the charge against him even though the indictment or information accurately charged the defendant of the crime.

The procedure for sentencing, in my view, is not entitled to any greater constitutional protection than the initial trial to determine whether or not the defendant is guilty or not guilty. Justice dictates that where the defendant could have taken steps to cure what he claims was defective notice but did not do so, he does not now, on appeal, stand on firm ground to have the proceedings dismissed because the notice did not adequately inform him in greater particularity of the reasons why he should be sentenced as a dangerous special offender.

Where the courts have held that failure to ask for a bill of particulars constitutes a waiver if the question is raised for the first time on appeal, then certainly a procedure on sentencing which is not considered any greater than the initial trial on guilt that failure to demand greater particularity or more information before the trial court constitutes a waiver. It stands to reason that where the defendant did not request additional information or claim that the notice did not apprise him adequately of the reasons why he should be declared a dangerous

special offender at the trial level, he is deemed to have waived his right to additional information and should not be permitted to raise the question on appeal.

If the court had relied only upon presentence investigation report or psychiatric examination as a result of the presentence investigation, and had notified the defendant accordingly, I would merely affirm the sentence, but it appears here that the court did not rely solely upon these items and that the prosecution introduced evidence in addition to the presentence investigation report and psychiatric examination.

We are not involved here with a situation where the defendant pleaded guilty without knowing that the prosecution was seeking to have him declared a dangerous special offender, and if he had been aware of this request he would not have pleaded guilty.

There is an additional matter of concern.

We must recognize that the notice referred to in subsection (3) of § 12.1–32–09, NDCC, upon being filed by the prosecutor becomes a public record, and as such would be available to the press unless it is sealed by the court. The sealing, in itself, could create some problems with the constitutional guarantees of the freedom of the press. This particular problem is mentioned only to illustrate the further problems created by § 12.1–32–09, NDCC, under consideration. This raises the question: Would it not be better if the notice were merely served upon the defendant, who could then demand more information or greater particularity? The notice served upon the defendant and any demands for greater particularity and any subsequent supplements to the original notice would all be brought to the attention of the trial judge after a plea of guilty has been received or a verdict of guilty has been reached, as the case may be.

The record does not disclose that the defendant asked for or moved for the equivalent of a bill of particulars.

On the ground that the defendant claims that he had not been adequately informed why he should be declared a dangerous offender so as to prepare a proper defense, which I believe has merit, I agree that the case should be remanded to the trial court with instructions to give the defendant adequate notice of the material that will be used against him in determining whether or not he is a dangerous special offender for purpose of imposing a longer sentence, and allow the defendant to present whatever evidence he thinks appropriate to refute the state's contention.

PAULSON, J., concurs.

ERICKSTAD, Chief Justice.

I agree with much of what Justice SAND has said herein, especially that part which urges the legislature to re-examine the statute involved.