STATE of North Dakota, Plaintiff
and Appellee,

v.

Mark Alan WELLS, Defendant
and Appellant.

Cr. No. 621–A.

Supreme Court of North Dakota.

Feb. 1, 1979.

Rehearing Denied Feb. 26, 1979.

John M. Olson, Burleigh County State's Atty., Bismarck, for plaintiff and appellee.

Benjamin C. Pulkrabek, Mandan, for defendant and appellant.

SAND, Justice.

On 12 May 1977 Mark Alan Wells entered a plea of guilty to the crime of murder and was later sentenced to a term of life imprisonment under the North Dakota dangerous special offender statute, § 12.1–32–09, North Dakota Century Code. Wells appealed the sentence attacking the constitutionality of the dangerous special offender statute. In a prior opinion on that appeal we upheld the constitutionality of § 12.1–32–09, NDCC, but remanded the case for resentencing because of lack of compliance with the notice provisions of the statute. On remand, Wells was again sentenced to a term of life imprisonment and has now appealed, raising the following issues:

(1) Did the trial court err in accepting the amended notice of dangerous special offender after Wells had entered a plea of guilty;

(2) Is subdivision 12.1–32–09(1)(a), NDCC, unconstitutionally vague;

(3) Did the trial court err in denying Wells' motion for a new presentence report;

(4) Did the trial court err in denying Wells' motion for a new psychiatric report; and

(5) Did the trial court err in denying Wells' motion for a court-appointed investigator.

I

In our earlier opinion we remanded this case for resentencing on the basis the notification filed pursuant to the statute did not meet the statutory requirement of setting out with particularity the reasons why the state's attorney believed the defendant to be a dangerous special offender. *State v. Wells,* 265 N.W.2d 239 (N.D.1978). On remand the State filed an amended notice of dangerous special offender, a motion for

correction of the manner in which sentence was imposed, and a notice to defendant setting forth the intentions of the State in its motion for correction of sentence and offering Wells the opportunity to present witnesses on his own behalf, to further cross-examine any State witnesses, and to inspect any evidentiary items. Following a sentencing hearing, Wells was again sentenced to a term of life imprisonment on 5 June 1978.

Wells contended it was error for the trial court to accept the State's amended notice of dangerous special offender and sentence him under the provisions of § 12.1–32–09, NDCC, after he had previously entered a plea of guilty. We now examine Wells' contention in addition to our earlier opinion in this case.

Section 12.1–32–09, NDCC, was enacted by the North Dakota Legislature in 1973[1] as part of our new criminal code and was amended in 1975,[2] and again in 1977.[3] Subsection 12.1–32–09(1), provides in pertinent part:

"A court may sentence a convicted offender to an extended sentence as a dangerous special offender in accordance with the provisions of this section upon a finding of any one or more of the following:

a. The convicted offender is a dangerous, mentally abnormal person. The court shall not make such a finding unless the presentence report, including a psychiatric examination, concludes that the offender's conduct has been characterized by persistent aggressive behavior, and that such behavior makes him a serious danger to other persons.

b. The convicted offender is a professional criminal. The court shall not make such a finding unless the offender is an adult and the presentence report shows that the offender has substantial income or resources derived from criminal activity.

c. The convicted offender is a persistent offender. The court shall not make such a finding unless the offender is an adult and has previously been convicted in any state or states or by the United States of two felonies of class B or above, or of one class B felony or above plus two offenses potentially punishable by imprisonment classified below class B felony, committed at different times when the offender was an adult. For the purposes of this subdivision, a felony conviction in another state or under the laws of the United States shall be considered a felony of class B or above if it is punishable by a maximum term of imprisonment of ten years or more.

d. The offender was convicted of an offense which seriously endangered the life of another person, and the offender had previously been convicted of a similar offense.

e. The offender is especially dangerous because he used a firearm, dangerous weapon, or destructive device in the commission of the offense or during the flight therefrom."

Subsection 12.1–32–09(2) provides the increased sentencing terms the trial court may impose after finding the defendant to be a dangerous special offender. Of importance to this case is that subsection (2) allows the trial court to impose a maximum term of life imprisonment on a defendant convicted of a class A felony and found to be a dangerous special offender.

Subsection 12.1–32–09(3) sets forth the procedure and notice requirements the State must follow in seeking to have a defendant sentenced as a dangerous special offender. It states, in pertinent part:

"3. Whenever an attorney charged with the prosecution of a defendant in a court of this state for an alleged felony committed when the defendant was over the age of eighteen years has reason to believe that the defendant is a dangerous

---

**1.** N.D.S.L.1973, ch. 116, § 31.

**2.** N.D.S.L.1975, ch. 116, § 30.

**3.** N.D.S.L.1977, ch. 128, § 1.

special offender, such attorney, at a reasonable time before trial or acceptance by the court of a plea of guilty, may sign and file with the court, and may amend, a notice specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection 2, and setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. . . . "

Finally, subsection (4) of § 12.1–32–09, NDCC, requires a hearing before the trial court to determine whether or not the defendant is a dangerous special offender. It also provides that the defendant be given notice of the hearing, be allowed to inspect any presentence reports, and have the rights of compulsory process and cross-examination of witnesses. In addition, it requires the finding by the trial court, that a defendant is a dangerous special offender, be made by a preponderance of the evidence.

In examining the language of § 12.1–32–09(1), we stated in *State v. Ternes,* 259 N.W.2d 296, 299 (N.D.1977), United States *cert. denied,* 435 U.S. 944, 98 S.Ct. 1524, 55 L.Ed.2d 540:

"We interpret the words of the statute as establishing four categories of special offenders who may be shown to be dangerous, and one category of special offenders who are, per se, dangerous. We cannot say that the Legislature has not the power to do that."

We also stated in that opinion:

"We believe it proper to construe § 12.1–32–09, NDCC, to mean that, except as hereinafter noted, the prosecutor must show that a period of confinement greater than that normally provided as a penalty for the particular offense is required to protect the public from further criminal conduct. Because of definitive language in § 12.1–32–09(1)(e), NDCC, we conclude that this showing can be made by mere proof that the defendant used a firearm, dangerous weapon, or destructive device in the commission of an of-

fense or during the flight therefrom." *State v. Ternes, supra,* at 299.

We reached our belief in *Ternes,* concerning the requirement of the prosecution to show the necessity for a greater period of confinement, on the basis of the federal dangerous special offender statute, 18 U.S.C. § 3575, and federal opinions interpreting that statute. A re-examination and recomparison of the federal statute and the North Dakota dangerous special offender statute, however, leads us to conclude that substantial differences between the two statutes affect our discussion in *Ternes,* although the holding of that case is not altered. The federal statute, 18 U.S.C. § 3575, provides, in pertinent part:

"(a) Whenever an attorney charged with the prosecution of a defendant . . . has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. . .

"(e) A defendant is a special offender for purposes of this section if—

(1) the defendant has previously been convicted . . . for two or more offenses committed on occasions different from one another . . . ; or

(2) the defendant committed such felony as part of a pattern of conduct which was criminal under applicable laws of any jurisdiction, which constituted a substantial source of his income, and in which he manifested special skill or expertise; or

(3) such felony was, or the defendant committed such felony in furtherance of, a conspiracy . . . .

"(f) A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant."

Section 3575 of the United States Code has been interpreted by federal courts to require two separate findings by the trial court before a defendant can be sentenced as a dangerous special offender. *United States v. Neary,* 552 F.2d 1184 (7th Cir. 1977), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139. See also, *United States v. Williamson,* 567 F.2d 610 (4th Cir. 1977); *United States v. Ilacqua,* 562 F.2d 399 (6th Cir. 1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545; *United States v. Kelly,* 519 F.2d 251 (8th Cir. 1975). These opinions have concluded the trial court must find the defendant is a *special* offender as defined in one of the three categories of subsection (e) of 18 U.S.C. § 3575, i. e., a recidivist, professional criminal, or organized crime conspirator. The trial court must also make a second finding that the defendant is *dangerous* as defined in subsection (f) of 18 U.S.C. § 3575, i. e., "a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant." An explanation of the federal court's reasoning is found in *United States v. Neary, supra,* at page 1193:

"We note a marked difference between the type of issue to be decided by a finding of special offender status under § 3575(e) and the type of issue decided by a finding of dangerousness under § 3575(f). The former involves historical facts, either prior convictions (under (e)(1) or the character and concomitants of the offensive conduct (under (e)(2) and (3)). The latter essentially involves both evaluation of the character of the defendant and a prediction of future conduct, matters which are traditionally left to wide discretion of a sentencing court. Because of this difference, we conclude that the essential function of a finding of special offender, under (e), is to expose the defendant to a sentence of imprisonment longer than the maximum prescribed by the statute under which he has been charged and convicted, but not exceeding twenty-five years, and that the essential functions of a finding of dangerousness, under (f), is to determine whether and to what extent a sentence in excess of the maximum for the particular offense is appropriate.

"Particularly with respect to (e)(1), we note that its implementation is analogous to a recidivist statute: determination of prior convictions and imprisonment subjects the defendant to liability of increased punishment for the instant crime. Under a recidivist statute, the finding whether a defendant is a habitual criminal is a determination independent of conviction on the present charge. *Graham v. West Virginia,* 224 U.S. 616, 625, 32 S.Ct. 583, 586, 56 L.Ed. 917 (1912); see *Chandler v. Fretag,* 348 U.S. 3, 8, 75 S.Ct. 1, 4, 99 L.Ed. 4 (1954); *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)."

Federal cases interpreting the requirement of notice under subsection (a) of the federal dangerous special offender statute have held such notice must specify that the defendant is a "special offender" under subsection (e)(3) of § 3575, and also set out with particularity the reasons why the prosecution believes the defendant to be "dangerous" under subsection (f). Federal cases overturning a defendant's sentence because of a lack of particularity in the notice have done so largely because of the prosecution's failure to specify with particularity why it believed the defendant was both a special offender and a dangerous offender. *United States v. Kelly, supra; United States v. Duardi,* 384 F.Supp. 856, 861, 871, 874 (W.D. Mo.1974), *appeal dismissed,* 514 F.2d 545 (8th Cir. 1975).

Professor Klein [4] has stated that at least three generalizations can be made about the

---

**4.** Klein, James H., *Extended Terms for Dangerous Offenders Under the Proposed Federal Criminal Code (S.1): The Emerging Legislative History,* 8 Loyola Law Journal 319 (1976–1977).

current federal requirements of notice under 18 U.S.C. § 3575. Those generalizations are:

(1) The notice must indicate the factual basis for the prosecutor's belief that the defendant, if convicted, may be subjected to an extended term;

(2) The statement of reasons must be in terms more concrete than a mere recital of statutory language defining a dangerous special offender; and

(3) Allegations must run to both dangerousness and special offender status, as those terms are separately defined in the current law.

Klein stated further that:

"In effect, the third requirement may impose on the Government the burden of pleading and proving in the pretrial notice that the defendant should be given an extended term of imprisonment. This potential exists because of the way in which 18 U.S.C. § 3575 and 21 U.S.C. § 849 [5] define the terms 'special offender' and 'dangerous.'" [Footnote ours.] [6]

As quoted earlier, we stated in *Ternes, supra,* that to meet the requirements of § 12.1–32–09, NDCC, the prosecution must show there is a need for a longer period of confinement than normally provided for as a penalty for the particular offense to protect the public from further criminal conduct. We also stated that § 12.1–32–09, NDCC, established four categories of special offenders who may be shown to be dangerous, and one category of special offenders who are, per se, dangerous.

■ As a result of those interpretations we created a requirement, similar to that under 18 U.S.C. § 3575, that notice be given and a specific finding be made that a defendant is dangerous as to warrant an enhanced sentence in order to invoke the extended sentencing terms provided in § 12.1–32–09, NDCC. We now conclude, however, that except for subdivision (a) of subsection

12.1–32–09(1), notice and a separate finding of *dangerousness* is not required to invoke the enhanced sentencing terms provided for by the North Dakota dangerous special offender statute.

■ We note that our statute, unlike the federal law, does not separately define "special" offender and "dangerous" offender. Section 12.1–32–09, NDCC, contains one definition for a "dangerous special offender," i. e., a defendant who is found: (1) to be a dangerous, mentally abnormal person as a result of a presentence report; or (2) to be a professional criminal; or (3) to be a recidivist; or (4) to have used a firearm, dangerous weapon, or destructive device in the commission of the offense or during the flight therefrom. There is no separate definition or requirement of a finding that a dangerous defendant is one requiring a period of confinement longer than that provided for the ordinary offender to protect the public from further criminal conduct by the defendant. Thus the term "dangerous special offender" in § 12.1–32–09, NDCC, is a generic term referring to all five categories of defendants set out in subsection (1) of the statute.

Subdivisions (b) through (d) of subsection 12.1–32–09(1) do not include the word "dangerous" in defining the type of defendant under those subdivisions. Thus a defendant, under subdivisions (b) through (d) of subsection 12.1–32–09(1), can be sentenced under the enhanced sentencing terms of the North Dakota dangerous special offender statute upon a showing that he is a professional criminal or a recidivist, absent a showing that he is dangerous. The language in subdivision (e) of subsection 12.1–32–09(1) that "the offender is especially dangerous because he used a firearm . . ." has been construed by this court to mean the dangerous element of that part of the subsection is per se implied on a showing that defendant used a firearm. *State v. Ternes, supra.*

---

**5.** The comprehensive drug abuse and prevention control act of 1970 contains provisions concerning increased sentences for dangerous special drug offenders.

**6.** Infra, n. 4.

■ Only subdivision (a) of subsection (1) requires a finding of dangerousness as a prerequisite to sentencing the defendant to an extended term as a dangerous special offender. A mere finding that a defendant is mentally abnormal does not meet the required finding of a dangerous special offender as defined under that part of the subsection. It should be pointed out, however, that subdivision (a) of subsection (1) sets forth a different test of dangerousness than that contained in 18 U.S.C. § 3575 and discussed by us in *State v. Ternes, supra.* In contrast to those definitions, § 12.1–32–09(1)(a) defines a dangerous, mentally abnormal person as one whose conduct is found as a result of a presentence report, including a psychiatric examination, to have been characterized by persistent aggressive behavior, and that such behavior makes him a serious danger to other persons. Although this definition of dangerousness, i. e., "such behavior makes him a serious danger to other persons," is similar to the federal definition, it does not require a finding, as does the federal definition, that an extended term of confinement is necessary to protect the public from the defendant's conduct.

Had the North Dakota Legislature intended to make dangerousness, as defined under either subdivision (1)(a), § 12.1–32–09, NDCC, or under 18 U.S.C. § 3575, an element of the other categories of dangerous special offender set forth in § 12.1–32–09, NDCC, it is reasonable to assume the legislature would have included the definition in each of the other categories as they did in subdivision (1)(a), or made it a separate finding requirement as was done in the federal statute. We can only conclude that by including dangerousness as an element of only one category of "dangerous special offender" and not of the others, the North Dakota legislature did not intend dangerousness to be a necessary finding as to those remaining categories.

■ As a finding of dangerousness is required only as to those defendants to be found dangerous special offenders under subdivision (1)(a) of § 12.1–32–09, NDCC, it

follows the notice requirement as to that subsection is different from that under the other categories. While it is necessary for the State in its notice to set out with particularity the reasons it believes the defendant is dangerous as to be found a "dangerous special offender" under subdivision (1)(a), the State need not set forth reasons it believes the defendant is dangerous, or even that it believes the defendant is dangerous, to meet the notice requirements of subdivisions (b) through (d) of subsection (1) because a finding of dangerousness is not required under those subdivisions.

We have engaged in this lengthy discussion of the finding and notice requirements under § 12.1–32–09, NDCC, to clear up some possible misunderstanding that may have resulted from language used in our prior opinions of *State v. Wells, supra,* and *State v. Ternes, supra.* Our discussion in this case, however, does not affect the holdings of those prior opinions. Our discussion in this case, reaffirms the conclusion in *Ternes* that the State, in seeking to find a defendant a dangerous special offender under subdivision (1)(e), need not set forth reasons why it believes such defendant to be dangerous to meet the notice requirements of § 12.1–32–09, NDCC.

■ In our previous opinion of *State v. Wells, supra,* the notice filed by the State was found insufficient because of its failure to set forth with particularity the reasons the State believed the defendant to be a dangerous, mentally abnormal person. The notice in that case had merely recited the State's belief that defendant was a dangerous, mentally abnormal person, without setting forth reasons for that belief. Our earlier discussion in this case also reaffirms our decision in that case that the State must set forth reasons for its belief that a defendant is both dangerous and mentally abnormal in seeking to have the defendant found to be a dangerous special offender under subdivision (1)(a). In addition, the particularity requirements of § 12.1–32–09, NDCC, are not met by a mere recitation of the statutory language, but rather the State must set forth specific reasons which led it to its belief.

The dangerous special offender statute does not create a new crime or a separate element of a crime. *State v. Wells, supra; United States v. Stewart,* 531 F.2d 326 (6th Cir. 1976), *cert. den.* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376. Section 12.1–32–09 is a portion of the North Dakota Century Code chapter entitled "Penalties and Sentencing." The section provides for a possible increased sentence upon conviction for an offense and after certain findings have been made by the trial court. The findings which the sentencing court is required to make under the statute merely trigger the possibility of an increased term of imprisonment under the terms of the statute. We note the implementation and considerations of the statute are analogous to a recidivist statute. Also the considerations are similar to factors normally considered by a judge in the sentencing process. The discretion vested in the sentencing court under this statute, however, is conditional in comparison to that usually vested in a sentencing court, because the court is required to make specific findings before the increased terms can be imposed. The fact that a defendant is found to be a dangerous special offender under § 12.1–32–09 does not prevent the trial court from imposing a sentence term less than the enhanced periods allowed for under the statute; it simply increases the possible range of sentences which may be imposed upon the defendant.

Section 12.1–32–04,[7] NDCC, sets forth factors to be considered by the trial court in imposing a sentence. Even after a defendant is found to be a dangerous special offender, the factors set forth in § 12.1–32–04, NDCC, must be considered by the trial court in determining the desirability of imposing sentence and the length thereof. Thus if a trial court finds sufficient mitigating factors in favor of a defendant, it has the power and discretion to impose no term of imprisonment or a term of imprisonment less than the extended terms provided for under § 12.1–32–09, NDCC, despite a prior finding that the defendant is a dangerous special offender as defined under § 12.1–32–09.

The sentencing procedure and structure under Chapter 12.1–32, NDCC, is a recognition of a philosophy of penology, which has been criticized by some, that the punishment should fit the offender and not merely the crime. As was stated by the United States Supreme Court in *Williams v. People*

---

7. Section 12.1–32–04. The following factors, or the converse thereof where appropriate, while not controlling the discretion of the court, shall be accorded weight in making determinations regarding the desirability of sentencing an offender to imprisonment:
 1. The defendant's criminal conduct neither caused nor threatened serious harm to another person or his property.
 2. The defendant did not plan or expect that his criminal conduct would cause or threaten serious harm to another person or his property.
 3. The defendant acted under strong provocation.
 4. There were substantial grounds which, though insufficient to establish a legal defense, tend to excuse or justify the defendant's conduct.
 5. The victim of the defendant's conduct induced or facilitated its commission.
 6. The defendant has made or will make restitution or reparation to the victim of his conduct for the damage or injury which was sustained.
 7. The defendant has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial period of time before the commission of the present offense.
 8. The defendant's conduct was the result of circumstances unlikely to recur.
 9. The character, history, and attitudes of the defendant indicate that he is unlikely to commit another crime.
 10. The defendant is particularly likely to respond affirmatively to probationary treatment.
 11. The imprisonment of the defendant would entail undue hardship to himself or his dependents.
 12. The defendant is elderly or in poor health.
 13. The defendant did not abuse a public position of responsibility or trust.
 14. The defendant cooperated with law enforcement authorities by bringing other offenders to justice, or otherwise cooperated.

 Nothing herein shall be deemed to require explicit reference to these factors in a presentence report or by the court at sentencing.

*of State of New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949), "the belief no longer prevails that every offense in a like legal category calls for identical punishment without regard to the past life and habits of a particular offender."

Wells argued the trial court erred in accepting the amended notice of the State under the dangerous special offender statute. Wells contended that allowing the notice to be amended after his entry of a plea of guilty did not allow him to make an informed plea, thereby violating his right of due process.

The State's notice of intent to seek a finding of dangerous special offender was amended after remand for sentencing following appeal by Wells of his original sentence. We stated in our opinion of that case, at page 246:

> "A majority of the court holds that the error is an error in sentencing, which can be corrected upon a remand to the district court. It therefore is ordered that the case is remanded for further sentencing proceedings, and that the State may amend its notice prior to the hearing so as to comply with the requirements of the statute."

Federal cases have held defective notice of dangerous special offender under 18 U.S.C. § 3575 cannot be amended after entry of a plea of guilty by a defendant. *United States v. Kelly,* 384 F.Supp. 1394 (W.D.Mo.1974), *aff'd* 519 F.2d 251 (1975); *United States v. Duardi, supra; United States v. Edwards,* 379 F.Supp. 617 (M.D. Fla.1974), *aff'd* 549 F.2d 362 (5th Cir. 1972), *cert. denied* 434 U.S. 828, 98 S.Ct. 107, 54 L.Ed.2d 87, *reh. denied* 434 U.S. 960, 98 S.Ct. 494, 54 L.Ed.2d 321. Those cases have held the proper remedy for the failure of the government to comply with dangerous special offender notice requirements is dismissal of the notice.

In reaching their conclusion that the defective notice under 18 U.S.C. § 3575 [8] could not be amended, the federal district courts relied on earlier federal opinions interpreting the notice requirements for enhanced sentencing under 21 U.S.C. § 851 [9] and strict construction of the language of 18 U.S.C. § 3575.

The notice provision of 21 U.S.C. § 851 provides in pertinent part:

> "No person . . . shall be sentenced to increased punishment by reason of . . . prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.
> . . . ."

The federal courts interpreting 21 U.S.C. § 851 have held that the trial court's authority to impose enhanced sentences on drug offenders by reason of prior drug felony convictions was restricted to cases where the information relied upon was filed with the court and served upon the defendant before trial. *United States v. Noland,* 495 F.2d 529 (5th Cir. 1974), *cert. denied* 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181; *United States v. Tramunti,* 377 F.Supp. 6 (S.D. N.Y.1974), *modified* 513 F.2d 1087 (2d Cir. 1975), *cert. denied* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50, *reh. denied* 438 U.S. 832.

We believe the federal court's interpretation that 18 U.S.C. § 3575 prevents filing amended notice after a guilty plea has been entered relies too heavily on the early opinions interpreting 21 U.S.C. § 851. The notice provisions of 18 U.S.C. § 3575 do not contain the "unless" provision found in 21 U.S.C. § 851 which compelled the courts interpreting that statute to conclude that unless the notice and information was filed before trial the court did not have authority to impose an enhanced sentence. The language of 18 U.S.C. § 3575 and, cor-

---

**8.** 18 U.S.C. § 3575 is part of the Organized Crime Control Act (Public Law 91–452, Title X, § 1001(a) Oct. 15, 1970, 84 Stat. 948).

**9.** 21 U.S.C. § 851 is part of the Comprehensive Drug Abuse and Control Act of 1970 (Public Law 91–513, Title II, § 411, Oct. 27, 1970, 84 Stat. 1269).

respondingly, § 12.1–32–09, NDCC, is not so definite as that of 21 U.S.C. § 851 as to prohibit the amending of notice after a plea of guilty has been entered. See special concurrence, *State v. Wells, supra.*

As was stated by this author in a special concurring opinion of *State v. Wells, supra,* at pages 246 and 247:

"Generally, where the Legislature adopted a federal statute there is a presumption the Legislature intended to accomplish purposes and objectives similar to those of the Congress which enacted the law. Also, where the statute has been construed by the federal courts before the Legislature adopted the statute it is presumed that the Legislature adopted the statute with the construction placed upon it by the federal courts. However, where the statute adopted has not been interpreted and construed by the federal courts at the time of the enactment by the Legislature, subsequent interpretation or construction by the federal court will not be controlling but may be persuasive.[10]

"In those instances, where material and substantive changes are made by the Legislature in adopting a federal statute the presumption that the Legislature intended to accomplish the same purposes and objectives as the Congress is no longer valid. Substantive changes can easily, and probably do, indicate different purposes and objectives than those intended by the Congress when it initially enacted the law." [11]

North Dakota Century Code § 12.1–32–09 was enacted in 1973, prior to the opinions handed down by the federal courts interpreting 18 U.S.C. § 3575 as preventing amendment of notice of dangerous special offender after entry of a plea of guilty. Also § 12.1–32–09, NDCC, contains considerable and significant differences from the federal dangerous special offender stat-

ute. Thus, although we consider the interpretation of the federal courts in construing the notice provisions of 18 U.S.C. § 3575, we are not compelled to find, nor do we find, that reasoning persuasive in interpreting the notice provisions of the North Dakota dangerous special offender statute.

■ For this court to adopt the federal court position that notice of dangerous special offender cannot be amended after conviction or entry of a guilty plea would result in a stricter notice procedure for sentencing than is required to charge a defendant with a crime. We find such a concept difficult to accept. In interpreting the notice requirements of § 12.1–32–09, NDCC, we adopt a statement made by the Sixth Circuit Court of Appeals discussing the amendment of indictments in *United States v. Pandilidis,* 524 F.2d 644, 648 (6th Cir. 1975):

"The rule preventing the amendment of an indictment should be applied in a way that will preserve these rights [under the Fifth and Sixth Amendments] from invasion; where these rights are not threatened, rules governing indictments should not be applied in such a way as to defeat justice fairly administered."

Wells did not file a bill of particulars as to the original notice of dangerous special offender. Thus he is now appealing a sentence because the notice of dangerous special offender did not allow him to make an informed plea even though he did not request additional information through a bill of particulars. To adopt the federal interpretation would allow attorneys, whose sworn professional responsibility is to advise their clients, to take part in a guilty plea proceeding, even expressly approve it, and then assign error in the trial court's failure to make a record of advice on some particular item. "This makes it possible for attorneys to base an appeal upon an error in the proceedings which they recognized

**10.** The North Dakota act was modeled after proposed federal legislation referred to as "Proposed New Federal Criminal Code" and was not modeled after either 18 U.S.C. § 3575 or 21 U.S.C. § 851.

**11.** The North Dakota dangerous special offender provision was not modeled after 18 U.S.C. § 3575 or 21 U.S.C. § 851 and differs substantially from them, as pointed out in this opinion.

but failed to disclose at the time the plea was taken." *State v. Reaves*, 254 N.W.2d 488 (Iowa 1977).

The provisions of § 12.1–32–09 provide for more due process protection than is required in normal criminal sentencing procedures. The statutory due process requirement under § 12.1–32–09, that the State set forth with particularity the reasons for its belief the defendant is a dangerous special offender, differs from a constitutional due process requirement that defendant be given notice of the potential sentence before he is required to plead. We conclude constitutional due process requirements were met by the notice in this case through informing the defendant that the State intended to seek an extended sentencing term under the provisions of § 12.1–32–09, NDCC, and that such intent was based upon its belief that defendant was a dangerous, mentally abnormal person. Although the notice did not set forth with particularity the reasons for the State's belief that defendant was a dangerous, mentally abnormal person, and thus did not meet the requirements of the statute, it did provide defendant with sufficient notice to enter an informed plea and thus was not so defective as to violate constitutional due process and prevent amendment after a plea was entered.

Although there may be instances in which statutory notice requirements are so flagrantly violated that amendment following a plea is prohibited, this is not such a case. The particularity requirement of § 12.1–32–09, NDCC, puts the defendant on notice of the reasons the State believes the defendant is a dangerous special offender, giving him an idea of the type of argument the State intends to invoke in order that he be better able to exercise his right of confrontation. The statute, however, does not require the State to set forth in its notice all the information and evidence that may be offered and considered at the sentencing hearing. That such is not required is apparent by the language of the statute that the trial court reach its conclusion based upon the presentence report. A requirement that the notice set forth all the information contained in the presentence report would be impractical as a presentence report would generally not be prepared prior to a finding of guilt and seldom before defendant is required to plead.

If Wells felt he needed a more detailed notice to enter an informed plea in this case, he could have filed a bill of particulars.[12] Because the State's notice in this case was sufficient to impart knowledge upon Wells of the intention of the State to proceed pursuant to subdivision (1)(a) of the North Dakota dangerous special offender statute, it met the requirement of constitutional due process, and because Wells failed to raise an objection at the time or demand a bill of particulars for more detailed notice, his complaint now, that he was prevented from entering an informed plea, is not meritorious.

We found the original notice in this case defective because it did not comply with the requirements of the statute. On remand Wells was served with particularized notice in addition to being allowed to examine all evidence to be presented at the sentencing hearing and the right to subpoena and cross-examine witnesses. Wells has failed to show he was prejudiced by the amended notice or that the statute does not permit an amended notice.

## II

The next issue before us is whether or not § 12.1–32–09(1)(a), NDCC, is unconstitutionally vague. Wells argued the terms "dangerous, mentally abnormal person," "persistent aggressive behavior," and "seri-

---

12. We note that at the time Wells entered his plea of guilty, subsection (3) of § 12.1–32–09, NDCC, provided that the fact the prosecuting attorney was seeking sentencing of the defendant as a dangerous special offender was not to be disclosed to the presiding judge before entry of a plea of guilty. That provision did not prevent defendant from filing his request or demand for a bill of particulars upon the State's Attorney without informing the presiding judge of such a request.

ous danger to other persons," are unconstitutionally vague in that they "fail to set out a standard and are so uncertain they can't be determined with reasonable definiteness as to the type of past conduct a person must have been involved in before that person can be considered a dangerous, mentally abnormal person."

 This issue was dealt with to some extent in our earlier opinion of *State v. Wells, supra,* wherein we said the term "mentally abnormal" is not separately and specifically defined in the statute. The statute, however, provides a finding that the defendant is a dangerous, mentally abnormal person, may not be made unless the court concludes, from the presentence report, including a psychiatric examination, that the offender's conduct has been characterized by persistent aggressive behavior, making him a serious danger to others. Earlier in this opinion we noted that the term "dangerous, mentally abnormal" in subsection 12.1–32–09(1)(a) is later defined by language in the statute to mean persistent aggressive behavior which makes a defendant a serious danger to other persons. We conclude the term "mentally abnormal" may not be employed separately but must be considered in conjunction with dangerous and such term is defined by the statute as a defendant whose conduct has been characterized by persistent aggressive behavior dangerous to others.

 The statute does not make it a criminal offense to be a "dangerous, mentally abnormal" person. It merely makes it a consideration of the court in imposing the sentence. This case is not similar to the situation where criminal statutes have been held unconstitutionally vague because they fail to adequately inform the public of what level of conduct is forbidden by the statute. *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972). Rather, § 12.1–32–09(1), NDCC, describes findings a sentencing court must make in connection with a defendant, convicted—not of being danger-

ously mentally abnormal—but of having violated a law of the State of North Dakota.

We reaffirm our earlier conclusion in *State v. Wells, supra,* that the term "mentally abnormal" and "persistent aggressive behavior" are readily comprehensible to courts, probation officers and psychiatrists, and that attempts to further refine the terms could be counterproductive. See, *State v. Motsko,* 261 N.W.2d 860 (N.D.1977). For the same reasons, we also conclude the subsection is not unconstitutionally vague as it relates to the word "dangerous." See, *United States v. Williamson, supra; United States v. Bowdach,* 561 F.2d 1160 (5th Cir. 1977); *United States v. Neary, supra;* and *United States v. Stewart, supra.*

### III

Wells appealed the denial of both his motion for a new presentence report and his motion for a new psychiatric report. Because these two issues are so closely related we will discuss them together.

Both the presentence report and the psychiatric report used by the trial court in finding Wells a dangerous special offender were prepared prior to his original sentence that was appealed and remanded. Consequently at the time of the second sentencing hearing the presentence report was approximately eleven months old and the psychiatric report was approximately fifteen months old.

Wells argued the presentence report not only failed to include an evaluation of his behavior since the time it was prepared but also certain events during his life were omitted from the report that demonstrated he was not persistently aggressive. Wells also contended without a new psychiatric report he was unable to contradict the opinion of the psychiatrist who testified at the sentencing hearing that there was little chance that Wells' mental condition would change.

 We first conclude the North Dakota dangerous special offender statute does not require either the presentence report or the psychiatric report to be prepared

immediately prior to the sentencing hearing. The presentence report by its very nature has built-in limitations and ordinarily it should cover pertinent activities of the defendant up to the time of the trial. Generally the court in its sound discretion will direct that special attention be given to certain areas or time periods. The psychiatric report should be contemporary with the situation to include the time up to the original sentencing. A new report on re-sentencing is not necessary but may be required. If the report is to be made at public expense, however, the decision whether or not an up-to-date report will be helpful will be left to the sound discretion of the trial judge. Although the age of a presentence report or a psychiatric report may affect the weight the trial court places on such report, age alone does not necessarily prevent its use or invalidate a trial court's findings based thereon.

We conclude the failure to grant a new presentence report to include Wells' behavior between the time of his conviction and the time of the sentencing hearing was not error. Because Wells was in custody between the time of his conviction and the time of his sentencing hearing, evidence that Wells did not engage in any aggressive behavior while incarcerated in such a controlled environment does not affect the value of the presentence report which concluded his conduct was characterized with such behavior prior to his conviction and incarceration.

▇▇▇ Nor do we conclude as error the failure of the presentence report to include instances during Wells' life when his conduct was not aggressive. Wells argued such events demonstrated his behavior was not "persistently aggressive." The statute, however, does not require a conclusion that a defendant's conduct be persistently aggressive but only that it be *characterized* by persistent aggressive behavior. Thus there is no requirement that his behavior be constantly aggressive. We also observe with significance that the presentence report showed Wells' aggressive conduct was usually directed toward women and was char-

acterized by sexual deviancy whereas the instances which Wells sought to have included in the second presentence report pertained to situations and atmospheres where women or the opportunity for his sexual deviancies were absent. Consequently, inclusion of those occasions in the presentence report would not have altered the basic conclusions of the report that upon certain stimuli, the defendant on a number of occasions in the past had engaged in aggressive behavior.

The doctor who prepared the psychiatric report testified it was highly unlikely the personality characteristics observed in Wells would change. Wells contended he should have been granted a new psychiatric report to enable him to contradict that conclusion. The purpose of a psychiatric report as part of a presentence report is to assist the court in making a finding of whether or not a defendant is dangerously mentally abnormal. The presentence report, including the psychiatric report, supported the conclusion that prior to conviction Wells was characterized by persistent aggressive behavior which presented a serious threat to other persons. The testimony of the doctor who prepared the psychiatric report demonstrated that further testing would not change the results of the report. That Wells was able to adjust his conduct following conviction is not relevant in this case simply because he has been able to secure a new sentencing hearing on appeal. Accordingly, we conclude Wells failed to demonstrate prejudice as to justify remanding this case for a new sentencing hearing. Such a remand and order for a new presentence report would accomplish nothing, as it is quite apparent the findings would not be altered.

IV

▇▇▇ Finally, Wells argued it was error for the court to deny his motion to hire an investigator to examine the presentence report and prepare a separate presentence report on Wells. The idea of a presentence report on a presentence report seems a little absurd to us. Wells had the right to coun-

sel, the right of compulsory process, and the right to cross-examine government witnesses. Certainly, Wells without the assistance of an investigator, should know better than anyone if evidence concerning his life contained in a presentence report was insufficient or in error. If such evidence was insufficient or in error, Wells could have pointed out such deficiencies through the exercise of his right to counsel, compulsory process, and cross-examination. That he failed to do so or that such deficiencies were found to not substantially affect the conclusions of the report does not support his contended right to a new sentencing hearing.

The order of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON, and VANDE WALLE, JJ., concur.