954 So.2d 723 (2007)
WINN-DIXIE STORES, INC., Appellant,
v.
David A. REDDICK & James A. Stokes, Appellees.
No. 1D04-4340.
District Court of Appeal of Florida, First District.
April 26, 2007.
Rehearing Denied April 26, 2007.
*725 Edward H. Trent and Richard N. Margulies of Akerman Senterfitt, Jacksonville, Eric J. Holshouser, Coffman, Coleman, Andrews & Grogan, P.A., Jacksonville, for Appellant.
T.A. "Tad" Delegal, III, and Shawntoyia Grier, Delegal Law Offices, P.A., Jacksonville, Kendra D. Presswood, Presswood Law Firm, P.A., Holmes Beach, for Appellees.
OPINION ON MOTION FOR REHEARING, CERTIFICATION, AND REHEARING EN BANC
HAWKES, J.
We deny appellee's motion for rehearing, certification, and rehearing en banc. However, this Court, sua sponte, withdraws its previous opinion, and substitutes this opinion in its place. See City of Cooper City/Florida Mun. Ins. Trust/Florida League of Cities v. Farthing, 905 So.2d 925, 926 (Fla. 1st DCA 2005) (withdrawing an opinion and reconsidering its merits upon this Court's own motion).
Appellant appeals the trial court's order awarding appellees attorney's fees and costs associated with their lower court action for employment discrimination, which was filed pursuant to the Florida Civil Rights Act of 1992 (FCRA), as amended. See §§ 760.01-760.11, Fla. Stat. On appeal, appellant presents three arguments for reversal. First, appellant argues that the trial court erred by awarding a contingency fee multiplier, because such an award is not permitted under the FCRA. Second, appellant argues that the trial court erred by taxing costs beyond those provided for in the Statewide Uniform Guidelines for Taxation of Costs in Civil Actions. Third, appellant argues that the trial court erred in calculating a "reasonable attorney's fee" in this case. In response, appellees have filed a cross-appeal challenging the trial court's denial of their request for attorney's fees for time spent litigating their entitlement to attorney's fees under the FCRA.
We find no merit in appellant's third point on appeal, except to the extent expressed in our discussion of the costs issue. Therefore, we affirm as to appellant's *726 challenge to the trial court's calculation of a reasonable attorney's fee without comment. However, because we find merit in appellant's first and second arguments on appeal and appellees' only point on cross-appeal, we reverse and remand for further proceedings.

Facts
In the underlying discrimination suit, appellees alleged that they were demoted and later terminated as a result of age discrimination. Alternatively, appellees alleged that they were fired in retaliation for reporting an incident of sexual harassment and/or for questioning whether their demotions were related to age discrimination. Following a two week jury trial, appellees were successful on some of their claims and were awarded a total of $700,000 in economic damages and $100,000 in punitive damages.
Upon completion of the trial, appellees moved for attorney's fees, costs, and the award of a contingency fee multiplier. Appellees requested $229,856.12 in attorney's fees and $65,305.24 in costs. This costs figure included requests for items such as postage, travel fees, office expenses, computerized research, photocopies, expert fees, and mock trials. An evidentiary hearing was held to determine the appropriate amount of attorney's fees and costs to be awarded.
Three Jacksonville attorneys testified during the evidentiary hearing. These attorneys were all accepted by the trial court as experts. In sum, the testimony of these three attorneys established that whether this case is reviewed as a category one or category two case, as those categories have been established pursuant to Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 833 (Fla.1990), a contingency fee multiplier was appropriate.
After considering all the evidence, the trial court granted appellees attorney's fees of $191,513.79 as well as a multiplier of 2.0. In reaching the $191,513.79 figure, the trial court reduced the requested fee award ($229,856.12) by $10,983.22, because the requested fee included fees connected to time spent litigating appellees' entitlement to fees. The trial court also reduced the calculated lodestar ($218,872.90) by 12.5 percent to account for time spent litigating unsuccessful claims. However, due to the award of a multiplier, the attorney's fees actually awarded were $383,027.58. Regarding the costs issue, the trial court found that not all of the costs requested by appellees were permitted under the Statewide Uniform Guidelines For Taxation of Costs in Civil Actions. Accordingly, the trial court reduced the $65,305.24, requested in costs, by 12.5 percent and awarded $57,142.09 in costs.

The Florida Civil Rights Act Does Not Permit the Award of Contingency Fee Multipliers
The key challenge presented by the E/C relates to whether the FCRA permits the award of a multiplier. A review of the pertinent law leads us to conclude that contingency fee multipliers are not permitted under the FCRA. As this issue deals with the construction of section 760.11(5), Florida Statutes, it is reviewed by this Court de novo. See Agency for Health Care Admin. v. HHCI Ltd. P'ship, 865 So.2d 593, 595 (Fla. 1st DCA 2004) (holding that the application of undisputed facts to a statute allowing for the award of attorney's fees is reviewed de novo).
Section 760.11(5), Florida Statutes, specifically states that "[i]n any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." This subsection is the statutory authority, relied upon by the trial court, for awarding appellees attorney's *727 fees in this case. However, in the sentence immediately following the statutory grant of authority to award attorney's fees, the statute states, "[i]t is the intent of the Legislature that this provision for attorney's fees be interpreted in a manner consistent with federal case law involving a Title VII action." § 760.11(5), Fla. Stat. (1992). This statutory statement of legislative intent clearly and unambiguously requires that Florida courts conform their rulings respecting the award of attorney's fees, under this section, to federal case law interpretations of Title VII attorney's fees actions.
The amendment adding this statement of legislative intent was signed into law on June 17, 1992. See Ch. 92-282, Laws of Fla. Seven days after this language was added to the FCRA, the United States Supreme Court decided Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), which effectively held that fee multipliers could not be awarded in cases involving federal fee shifting statutes. Subsequent to the Dague decision, the Eleventh Circuit held that under no circumstances were contingency fee multipliers permissible under Title VII. McKenzie v. Cooper, Levins, & Pastko, Inc., 990 F.2d 1183, 1186 (11th Cir.1993).
Prior to Dague, it was unsettled whether contingency fee multipliers could be awarded in connection with federal fee shifting statutes. During this pre-Dague period, the Eleventh Circuit had ruled that an enhancement over and above the "lodestar" may be awarded in Title VII actions to compensate attorneys for the risk of accepting a case on a contingency basis and to attract competent counsel. See Richardson v. Alabama State Bd. of Ed., 935 F.2d 1240, 1248 (11th Cir.1991).[1] However, in King v. Palmer, 950 F.2d 771, 784 (D.C.Cir.1991), the D.C. Circuit, en banc, specifically held that "that contingency enhancements will not be available in this Circuit." While it is clear that federal circuits generally accepted the applicability of contingency fee multipliers in Title VII actions at the time the FCRA was amended, not every circuit had accepted contingency fee multipliers as appropriate.
On appeal, appellees, unconvincingly, argue that federal decisional law post-dating the legislature's amendment of the FCRA is not binding authority when interpreting the FCRA. There are two reasons why appellees' argument on this point must fail. First, the plain language of the statute unambiguously calls for Florida courts to interpret the attorney's fees provision of this statute in conformity with federal case law under Title VII. See Atlantis at Perdido Ass'n, Inc. v. Warner, 932 So.2d 1206, 1212-13 (Fla. 1st DCA 2006) ("[T]his court is without power to construe an unambiguous *728 statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.") (internal citations and quotations omitted). Second, even if the language of the statute is found to be ambiguous as to whether it was intended only to incorporate case law pre-dating the amendment, the legislative intent language of the amendment would be rendered meaningless by the interpretation appellees forward. Koile v. State, 934 So.2d 1226, 1233 (Fla.2006) (noting that "courts should avoid readings that would render part of a statute meaningless").
The plain language of the legislative intent phrase does not, by its own terms, limit its application to "federal case law" decided prior to the enactment of the amendment. Neither does its language suggest any preferred result with respect to the appropriateness of contingency fee multipliers. Clearly, the legislature was aware that federal case law interpreting Title VII attorney's fees actions would be decided after the statute was amended. Had the legislature wished to limit the application of this language to case law pre-dating the amendment, it could have easily said so. Accordingly, the most logical reading of the statute mandates that the attorney's fees provision of the statute be interpreted in conformity with federal case law irrespective of whether the case law "pre" or "post" dates this amendment.
Assuming, arguendo, that there is some ambiguity as to whether the statutory amendment was intended to tether the state statute to federal case law post-dating the enactment of the amendment, this Court must determine what purpose the amendment was intended to serve. As noted above, this Court should avoid construing a statute in a manner that renders a portion of the language meaningless. To address this question, we turn to two long-standing canons of statutory interpretation. The first of these "recognizes that if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as in federal courts to the extent the construction is harmonious with the spirit of the Florida legislation." O'Loughlin v. Pinchback, 579 So.2d 788, 791 (Fla. 1st DCA 1991); Kidd v. City of Jacksonville, 97 Fla. 297, 120 So. 556 (1929); Massie v. Univ. of Fla., 570 So.2d 963 (Fla. 1st DCA 1990). The second mandates that courts presume the legislature was aware of the effect that the first canon had on the interpretation of the FCRA, which was modeled after Title VII. See Seagrave v. State, 802 So.2d 281, 290 (Fla.2001) ("Florida's well-settled rule of statutory construction [is] that the legislature is presumed to know the existing law when a statute is enacted, including `judicial decisions on the subject concerning which it subsequently enacts a statute.'"); see also Wood v. Fraser, 677 So.2d 15, 18 (Fla. 2d DCA 1996) (quoting Collins Inv. Co. v. Metro. Dade County, 164 So.2d 806, 809 (Fla.1964) for the same).
Our inquiry into what purpose the legislative intent language of section 790.11(5), Florida Statutes, was intended to serve, must be guided by both of these statutory canons. We must assume the legislature was fully aware that Florida courts would construe all segments of the FCRA in a manner consistent with federal constructions of Title VII, with or without language to that effect. Therefore, the logical purpose for including this language was to ensure that courts would not deviate from federal case law constructions by declaring that the federal construction is not harmonious with the spirit of the Florida legislation. By stating, "[i]t is the intent of the Legislature that this provision for attorney's fees be interpreted in a manner consistent *729 with federal case law involving a Title VII action," § 760.11(5), Fla. Stat. (1992) (emphasis added), the legislature has placed Florida courts on notice that federal court constructions of Title VII are, by definition, "harmonious with the spirit of the Florida legislation."
In support of their position, appellees have cited to a number of state decisions holding that federal cases decided after the adoption of a state statute, modeled on a federal statute, are persuasive authority, at best, and in some situations may not be considered, at all, when interpreting such a state statute. See State v. Szarkowitz, 157 Wis.2d 740, 460 N.W.2d 819 (Wis.App. 1990); Ind. Dep't of State Revenue v. Estate of Wallace, 408 N.E.2d 150 (Ind. 1st DCA 1980) (stating "only cases decided prior to the adoption may be considered for [interpretation of the state law]"); State v. Wells, 276 N.W.2d 679 (N.D.1979) (holding a federal court's interpretation of a federal statute will only be persuasive and not controlling in evaluating a state statute enacted prior to the federal court's opinion); Kahn v. Kahn, 68 Cal.App.3d 372, 137 Cal.Rptr. 332 (Cal. 1st DCA 1977) (same); Estate of Walton v. State Dep't of Revenue, 579 So.2d 643 (Ala.Ct.App.1991) (where a state statute is modeled after a federal statute, subsequent amendment of the federal statute does not amend a similar state statute without action by the state legislature).
These cases present factual circumstances and legal considerations which are not sufficiently analogous to the instant case to provide this Court with much guidance. The first important distinction between the instant case and the cases relied upon by appellees relates to the existence of intervening Congressional action. In the instant case, the language of the federal statute controlling attorney's fees in Title VII actions was the same both when the FCRA was amended and when the Supreme Court issued its decision in Dague. As previously noted, the applicability of multipliers to Title VII actions remained in doubt until after Dague was issued. However, this does not mean that Dague resulted in a change in the substantive law. Rather, Dague merely operated to clarify an ambiguous area of the law by announcing the ever existing, but as yet undiscovered, meaning of the statutory language at issue. Accordingly, the legislature did not delegate its power to either Congress or the federal court system by requiring state courts to interpret this language in conformity with federal case law.[2]Dague did nothing more than resolved an ongoing dispute as to what the existing federal statutory language always had meant; therefore, Dague's ruling embodies exactly what the legislature had always intended the FCRA attorney's fee provision to mean.
The second noteworthy distinction, between this case and those cases cited by appellees, is that none of the cases cited by appellees involved a state statute that designated federal case law as the polestar upon which state courts must rely in construing the state statute. For obvious reasons, the absence of such language in the statutes involved in these cited cases *730 causes these cases to be of little help in resolving the instant matter. Based upon all the reasons stated above, the FCRA does not allow for the award of a contingency fee multiplier. Accordingly, the order of the trial court is reversed to the extent that it awards such a multiplier.

The Costs Award
The trial court has also erred with respect to its award of costs below. An appellate court reviews whether a trial court's award of costs is excessive for an abuse of discretion, Thomas v. Perkins, 723 So.2d 293, 294 (Fla. 3d DCA 1998); however, whether a cost requested may be awarded, at all, is a question of law to be reviewed de novo.
The FCRA does not in any way adopt, incorporate, or require the application of federal law to a determination of what costs may be awarded. Therefore, the award of costs is governed by Florida law on the subject. Under Florida law, taxable costs are governed by section 57.041, Florida Statutes, and the Statewide Uniform Guidelines for Taxation of Costs in Civil Actions. See In re: Statewide Uniform Guidelines for Taxation of Costs in Civil Actions, 7 Fla. L. Weekly S517 (Fla.1981). A trial court is permitted to deviate from these guidelines "depending on the facts of the case as justice may require." State, Dep't of Transp. v. Skidmore, 720 So.2d 1125, 1130 (Fla. 4th DCA 1998).
In the instant case, the trial court did not itemize which costs it chose to allow or disallow. Rather, it summarily reduced the costs requested by 12.5 percent. The trial court's failure to indicate which costs it was awarding is its first error on this point. As justification for this blanket reduction of costs, the trial court cites to Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), which stands for the proposition that, for purposes of the federal civil rights attorney's fee statute, the partial or limited nature of the success obtained by counsel should be considered in determining a reasonable attorney's fee, and that a reasonable attorney's fee may be determined by simply reducing the hours requested by some percentage. Hensley reviewed an action brought pursuant to federal law and includes no discussion of costs; therefore, the trial court's reliance upon Hensley for its imposition of a blanket reduction of costs was inappropriate.
On remand, the trial court must review the costs requested by appellees to determine which ones are appropriately awarded under Florida law and which ones are not. Otherwise, this Court cannot conduct an intelligent review of the awarded costs to determine whether the award of such costs is permitted, as a matter of law. See e.g., Ocean Club Cmty. Ass'n, Inc. v. Curtis, 935 So.2d 513, 517-18 (Fla. 3d DCA 2006).
The trial court's second error on this point arises from its apparent misconception concerning federal Title VII law relating to attorney's fees. In reducing the amount of costs requested by appellees, the trial court appears to have looked exclusively to the Statewide Uniform Guidelines for Taxation of Costs in Civil Actions. As Florida law precludes the award of some of these requested costs, such reliance was clearly appropriate for purposes of deciding the state law costs issue before the trial court. However, the trial court failed to consider whether these requested costs could be included as part of a reasonable attorney's fee award, pursuant to Title VII.
Federal case law has stated that "an award of attorney's fees in a civil rights case should include reasonable out of pocket expenditures of the attorney beyond *731 normal overhead. These nonstatutory costs [which are] subsumed within the reasonable attorney's fee could include compensation for postage, long distance calls, photocopying, travel, paralegals, expert witnesses, and computerized legal research." Cappeletti Bros., Inc., v. Broward County, 754 F.Supp. 197, 198 (S.D.Fla.1991) (internal citations omitted); see also Allen v. Freeman, 122 F.R.D. 589, 591 (S.D.Fla.1988). Accordingly, it is possible that some of the costs disallowed by the trial court could be awarded to appellees as part of a reasonable attorney's fee award. This would be the case if they are the types of costs which federal law allows to be subsumed within a reasonable attorney's fee under Title VII. On remand, the trial court should review the requested costs and determine two things: 1) whether the requested costs may be awarded under Florida law, and 2) whether federal case law, interpreting Title VII's attorney's fee statute, allows the requested costs to be included as part of a reasonable attorney's fee. If the requested costs may be awarded under Florida law, then they should be awarded as costs. If, however, the requested costs may be awarded as part of a reasonable attorney's fee pursuant to Title VII, then they should be awarded as part of the attorney's fee award in this case. If the requested costs fail to fall within either of these categories, then the requests should not be awarded.

Time Spent Litigating Entitlement to Fees
On cross-appeal, appellees argue that the trial court erred to the extent that it reduced their attorney's fee award to account for time spent litigating appellees' entitlement to attorney's fees. In response, appellant concedes that if an award of attorney's fees under the FCRA is governed by federal law, then appellees are entitled to fees for time spent litigating their entitlement to such fees. We find that appellees' argument on this point has merit and reverse the trial court's order on this point.
Whether attorney's fees may be awarded, pursuant to section 760.11(5), Florida Statutes, for time spent litigating appellees' entitlement to attorney's fees is a question of law to be reviewed de novo. See Waste Magmt., Inc. v. Mora, 940 So.2d 1105, 1107-08 (Fla.2006) (holding matters of statutory construction are reviewed de novo); see also Agency for Health Care Admin. v. HHCI Ltd. Partnership, 865 So.2d 593, 595 (Fla. 1st DCA 2004) (holding that the application of undisputed facts to a statute allowing for the award of attorney's fees is reviewed de novo).
As stated above, section 760.11(5), Florida Statutes, the attorney's fees provision, expressly states that it is to be construed in conformity with federal case law relating to Title VII. Federal decisional law clearly permits a party seeking entitlement to attorney's fees to receive an award for time spent establishing their entitlement to that fee. See Johnson v. State of Mississippi, 606 F.2d 635, 638 (5th Cir. 1979) (concluding "[a]ttorney's fees may be awarded for time spent litigating the fee claim"); see also Fewquay v. Page, 907 F.2d 1046 (11th Cir.1990); Aubin v. Fudala, 821 F.2d 45 (1st Cir.1987); Cunningham v. County of Los Angeles, 879 F.2d 481, 490 (9th Cir.1988). Accordingly, as a matter of law, section 760.11(5), Florida Statutes, permits appellants to receive an award of attorney's fees for time spent litigating their entitlement to such fees.
In this case, the trial court inappropriately relied upon state law, State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830 (Fla.1993) (stating that attorney's fees may not be awarded for litigating entitlement to said fees), as justification for denying appellees' entitlement to such fees. This *732 reliance upon state law was error. Therefore, this case is remanded to the trial court to determine appellees' entitlement to these attorney's fees. The trial court should engage in this process with the understanding that federal case law permits an award of reasonable attorney's fees for hours spent litigating entitlement to attorney's fees.

Conclusion
The trial court erred in awarding a contingency fee multiplier, under the FCRA, where federal law specifically prohibits the award of such a multiplier in Title VII actions and the FCRA expressly states that its attorney's fee provision is to be construed in conformity with federal Title VII case law. The trial court further erred in awarding costs based upon a pure percentage reduction of the costs requested. The trial court must identify which costs it has determined may be awarded under Florida law and evaluate the balance of the costs to determine whether they may be awarded as part of a reasonable attorney's fee in federal Title VII actions. Finally, the trial court erred in relying upon state law in denying appellees request for attorney's fees for hours spent litigating their entitlement to attorney's fees. Such fees may be awarded in Title VII actions, and Title VII law controls the award of attorneys fees in FCRA cases. Accordingly, this case is AFFIRMED in part, REVERSED in part and REMANDED with instructions, for further proceedings.
KAHN and THOMAS, JJ., concur.
NOTES
[1] Prior to Dague, many other circuits had also adopted tests for determining when an award of a contingency fee multiplier was appropriate. See Student Pub. Interest Research Group v. AT & T Bell Laboratories, 842 F.2d 1436, 1451-52 (3d Cir.1988) ("[C]ontingency multipliers should be granted only rarely."); Craig v. Sec'y, Dep't of Health & Human Servs., 864 F.2d 324, 327 (4th Cir.1989) (no contingency enhancement available "in the absence of exceptional circumstances"); Leroy v. City of Houston, 831 F.2d 576, 583 (5th Cir.1987) (contingency enhancements should be "reserved for `exceptional cases'" (citation omitted)); Skelton v. Gen. Motors Corp., 860 F.2d 250, 254 (7th Cir.1988) (contingency enhancements available only if plaintiffs meet "stringent requirements"); Hendrickson v. Branstad, 934 F.2d 158, 162 (8th Cir.1991) ("[E]nhancement is reserved for `rare' and `exceptional' cases"); Smith v. Freeman, 921 F.2d 1120, 1123 (10th Cir.1990) (quoting plurality's view that "enhancement for the risk of nonpayment should be reserved for exceptional cases"); But cf. D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1383 (9th Cir. 1990) (implying that routine contingency enhancements might be justified).
[2] If the United States Supreme Court were to later decide that it had erred in issuing Dague, and that contingency fee multipliers had always been permitted under Title VII, then the FCRA would be accordingly affected by such a ruling. However, a Congressional amendment to Title VII, which permitted the award of contingency fee multipliers, would have no effect on the FCRA without independent state legislative action. See Pinchback, 579 So.2d at 791. Similarly, a decision by the United States Supreme Court to alter its decision in Dague  not because it was wrongly decided, but  because it wished to affect a more desirable public policy would not correspondingly change the FCRA.